## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

## WEST PALM BEACH DIVISION

CASE NO.:

Rahal Letterman Lanigan Racing LLC,

Plaintiff,

vs.

**Jury Trial Demanded**

Seeman Holtz LLC and Seeman Holtz Property &
Casualty Insurance, LLC

Defendants.

_____/

## COMPLAINT

Plaintiff, Rahal Letterman Lanigan Racing, LLC, by and through its undersigned counsel, sues Defendants, Seeman Holtz LLC, and Seeman Holtz Property & Casualty Insurance LLC, and states:

## PARTIES

1. Plaintiff Rahal Letterman Lanagan Racing, LLC ("RLL"), is an Indiana limited liability company, having its principal place of business at 485 Southpoint Circle, Suite 900, Brownsburg, Indiana 46112.   Plaintiff RLL is a citizen and resident of the State of Indiana.   RLL is a leading race team in the IndyCar Series which competes in the IndyCar Series in races staged throughout the United States, including the annual "Indy 500" race.

1

2.  "Seeman Holtz" is a fictitious name registered in the State of Florida for National Senior Insurance, Inc. a Florida corporation.   The President of National Insurance, Inc. is Marshal Seeman and the Vice-President is Eric Holtz.   "Seeman Holtz" publicly promotes and advertises itself as a "family of companies" engaged in the insurance business.   The Seeman Holtz "family of companies" includes Defendant Seeman Holtz LLC, and Defendant Seeman Holtz Property & Casualty LLC.

3.  Defendant Seeman Holtz LLC, acting through Marshal Seeman, who claims to be its President, purports to be a Florida limited liability company, having its principal place of business at 301 Yamato Road, Suite 2222, Boca Raton, Florida 33231.   Defendant Seeman Holtz LLC at all times acted on behalf of and as an agent for Seeman Holtz Property & Casualty LLC ("Seeman"), which purports to be a Florida limited liability company, having its principal place of business at 301 Yamato Road, Suite 2222, Boca Raton, Florida 33231.   Marshal Seeman and Eric Holtz are listed in the State of Florida Sunbiz corporate registry as "Managers" of Seeman.   Defendant Seeman's website https://seemanholtzpc.com/ claims that it is a national independent insurance agency engaged in, among other things, the insurance brokerage business in the "property & casualty" space.   Defendants are both citizens and residents of the State of Florida.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship of the parties.

5.  The amount in controversy, without interest and costs, exceeds $75,000.00.

6.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b).

7.  Plaintiff RLL has retained the law firm of Yanowitch & Co. LLP in connection with the filing of this action, and has agreed to pay counsel a reasonable fee for their services.   Plaintiff RLL is entitled to its reasonable attorneys' fees and costs for bringing this action pursuant to the 2018 and 2019 Sponsorship Agreements between Plaintiff RLL, and Defendant Seeman, as further described herein.

8. All conditions precedent for bringing this action have been fully performed, waived, or excused.

## I. Factual Background

### A. Overview of IndyCar Series and Sponsorship Opportunities

9.  RLL owns and operates a leading professional motorsports team which competes annually in the IndyCar Series which is a prestigious professional motorsports series.   The IndyCar Series stages seventeen (17) races annually, including the internationally renowned "Indy 500", which is held annually at the Indianapolis Motor Speedway, in Indianapolis, Indiana.  The "Indy 500" is one of the most celebrated races in the world of professional motorsports, and draws hundreds of thousands of race fans, and a global television audience.

10.   RLL's ownership group is comprised of entrepreneur and IndyCar racing legend Robert "Bobby" Rahal; the celebrated comedian David Letterman, who is the retired host of the acclaimed television show "Late Night with David Letterman"; and Michael Lanigan, an entrepreneur and racing aficionado, who is the President of "Mi-Jack Construction Equipment", which manufactures rubber tire gantry cranes.

11.  Fielding a race team in the IndyCar Series is a very expensive endeavor.  It requires competing in seventeen (17) races staged annually throughout the United States.   All in an IndyCar racecar costs in excess of one million dollars.  Additional costs incurred by a professional motorsports team includes, but are not limited to: research and development, a second back up race car, spare parts, testing, driver, team and crew salaries and travel expenses, tractor trailer transporters, team offices and servicing facilities, pit equipment, race hospitality tents and food service equipment, hospitality staff, food & beverage, race entrant fees, public relations and promotions, and insurance.  A typical race team's annual budget can exceed ten million dollars a year for each race car fielded in the IndyCar Series.

12.  To support its annual racing efforts Plaintiff RLL, similar to other race teams in the IndyCar Series, offers various types of promotional corporate sponsorship opportunities in exchange for the payment of a sponsorship fee.   In the typical corporate sponsorship arrangement an IndyCar team agrees to associate the corporate sponsor's brand or tradename with the race team.  Moreover, IndyCar Series races are televised nationally and internationally which provides corporate sponsors with even greater promotional reach for their brands.

13. More specifically, in exchange for a sponsorship fee paid to the race team, corporate sponsors are able to brand their tradenames on the team's IndyCar Series race cars, on the team's race car transporter, pit equipment, driver, team and crew uniforms, and on in-car television cameras situated on the race car which broadcast live coverage during a race.  In addition, the race team offers corporate sponsors with the opportunity to have special corporate VIP hospitality and access to the team

personnel, and to the team's race paddock (being the team's racing operations base) during race weekends, and through a variety of promotional activities and media exposure, including television broadcasts, and the team's social media communications and posts.

**B. Seeman Holtz Enters Sponsorship Agreements with RLL**

14.   On or about May 24, 2018, Seeman and RLL entered into an agreement entitled "Motorsports Sponsorship Agreement" ("2018 Sponsorship Agreement") relating to Seeman's participation as a corporate sponsor of RLL in the 2018 "Indy500" race held on May 27, 2018.   See Exhibit "A" attached hereto.   Seeman Holtz LLC Motorsports Sponsorship Agreement dated May 24, 2018.   Under the 2018 Sponsorship Agreement, Seeman was to pay $250,000.00 to sponsor RLL's race driver, Takuma Sato, for the 2018 "Indy 500" race.   Takuma Sato is a well-known professional race driver and was the celebrated winner of the 2017 "Indy 500" race. Under the 2018 Sponsorship Agreement Seeman was to be designated as RLL's exclusive insurance industry sponsor, and property and casualty insurance promotional "Partner" of RLL.

15.   In exchange for the payments Seeman was to make to RLL, RLL was to provide Seeman logo placement on RLL's Takuma Sato's No. 30 IndyCar Series racing entrant for the 2018 "Indy 500".   In addition, RLL was to arrange for the Seeman's logo to be visible on the in-car camera on Takuma Sato's race car for the 2018 "Indy 500", and thus provide Seeman with coveted live television broadcast exposure.   By agreement of the parties, the Seeman's logo was also to be placed on Takuma Sato's racing suit.   Depictions of the positioning of the Seeman's logo on the

RLL race car and Takuma Sato's race suit were attached as Exhibits "A" and "B" to the 2018 Sponsorship Agreement.

16.   RLL proceeded to fully perform all of its obligations to Seeman under the 2018 Sponsorship Agreement.   RLL provided Seeman the 2018 "Indy 500" sponsorship benefits described in the 2018 Sponsorship Agreement, including the agreed upon signage on the RLL race car, driver and crew uniforms.   Moreover, Seeman representatives attended the 2018 "Indy 500", and acknowledged to RLL personnel that they were completely satisfied with the value returned from their sponsorship of RLL at the 2018 "Indy 500", and RLL's effort to provide them with VIP treatment at the race.   RLL did not receive any complaints or criticisms from Seeman about the delivery of any of the sponsorship benefits by RLL under the parties' 2018 Sponsorship Agreement.   As further evidence that they were satisfied with RLL's performance, Seeman proceeded to pay RLL the agreed upon $250,000.00 sponsorship fee in three (3) payments as follows: August 8, 2018 in the amount of $50,000.00; September 24, 2018 in the amount of $50,000.00; and October 23, 2018 in the amount of $150,000.00.

17.   The 2018 Sponsorship Agreement also included terms related to the continuation of the parties' sponsorship arrangement for the 2019 IndyCar Series race season. The 2018 Sponsorship Agreement provided that Seeman was to pay $500,000.00 for corporate sponsorship benefits for the  2019 IndyCar Series race season as follows: (i) as a primary sponsor on race driver Takuma Sato's race car at the first race of the 2019 IndyCar Series race season in St. Petersburg, Florida; and (ii)

as an associate sponsor of RLL's fellow race driver, Graham Rahal, for the entire seventeen (17) race 2019 IndyCar Series season.

18.  The 2018 Sponsorship Agreement further provided that the parties would use their "good faith efforts to finalize the arrangements for 2019 by either amending this MSA [Motorsports Sponsorship Agreement] or entering into a new MSA for the 2019 IndyCar Series Races on Graham Rahal's race car."  Given that Seeman had a positive experience as a corporate sponsor with RLL for the 2018 "Indy 500", Seeman and RLL through the course of dealing proceeded as agreed under the 2018 Sponsorship Agreement to continue their sponsorship relationship for the 2019 race season.

### C. The Parties Finalize a New 2019 Sponsorship Agreement

19.  As provided under the 2018 Sponsorship Agreement, in November, 2019, Seeman and RLL commenced discussions about continuing the sponsorship "arrangements" for the 2019 IndyCar Series race season.  Significant elements of these "arrangements" had already been agreed to by the parties in the 2018 Sponsorship Agreement which was executed by the head and namesake of the Seeman Holtz "family of companies"—Marshal Seeman himself.

20.  In the 2018 Sponsorship Agreement the parties anticipated that Seeman would continue as an RLL sponsor for the entire 2019 race season, and would remain RLL's exclusive insurance brokerage "partner".  Moreover, the cost of Seeman's sponsorship for the 2019 IndyCar Series season was previously agreed to in the amount of $500,000.00.  Marshall Seeman was fully aware of the amount of Seeman's payment obligations to RLL for the coming 2019 IndyCar Series season—he was the

one who agreed to them almost nine months before as evidenced by his very signature on the 2018 Sponsorship Agreement.   For the most part, the only remaining subject to be worked out by the parties was the specific scope of Seeman corporate sponsorship benefits for the 2019 IndyCar Series season.

21.   On November 26, 2018 Tom Knox circulated the draft of a new "Seeman Holtz Motorsports Sponsorship Agreement" to Glenn Chavious, who had been working on behalf of Seeman on the RLL sponsorship arrangements.  See Exhibit "B" "Seeman Holtz Motorsports Sponsorship Agreement" dated November 26, 2018 ("2019 Sponsorship Agreement").   The 2019 Sponsorship Agreement draft itemized the specific 2019 corporate sponsorship benefits that RLL would provide to Seeman.  The 2019 Sponsorship Agreement included the same $500,000.00 price tag previously negotiated, and agreed to by Marshal Seeman himself in the 2018 Sponsorship Agreement.

22.   On or about February 7, 2019, approximately one month prior to the first race of the 2019 IndyCar Series season, Tom Knox, the Senior Vice President of Sales and  Marketing for RLL,  traveled to Seeman's offices in Boca Raton, Florida to meet with Marshal Seeman and Terry Sgammato, a Director of Seeman, to review and finalize the terms of the 2019 Sponsorship Agreement.  The mutual obligations of the 2019 Sponsorship Agreement were thoroughly discussed between Tom Knox and Terry Sgammato during their meetings at Seeman's Boca Raton offices.  Tom Knox provided Terry Sgammato with an illustrative chart with a depiction of the Seeman tradename on RLL's driver uniform and race car.  See Exhibit "C".   Chart of 2019 RLL Sponsorship Deliverables to Seeman.

23.   Given that Seeman was expanding its corporate sponsorship relationship for the 2019 IndyCar Series seventeen (17) race season the sponsorship fee was to increase over the agreed upon sponsorship fee paid Seeman paid RLL for the one-off race in the 2018 IndyCar Series race season.   During their meeting in Boca Raton, the parties discussed the previously agreed to sponsorship fee of $500,000.00 set forth in the 2018 Sponsorship Agreement, a provision which was mirrored at paragraph 6 of the 2019 Sponsorship Agreement.

24.   The timing of the meeting of the parties in Boca Raton came several months after the initial draft 2019 Sponsorship Agreement had been circulated with its December 31, 2018 and June 1, 2019 proposed payment dates.   During their discussions, Tom Knox stated that RLL could be flexible on the payment schedule. Just as RLL had divided the 2018 sponsorship payments, Tom Knox informed Terry Sgammato that RLL was willing to divide the payment of the $500,000.00 sponsorship fee in two payments of $250,000.00.  Tom Knox said RLL would invoice Seeman for the two payments later in the 2019 race season, and Terry Sgammato said he was agreeable to this arrangement.   Furthermore, at paragraph 8 b Seeman represented and warranted that "Seeman has the financial capability to fulfill all of its commitments as outlined herein.   At the conclusion of the Boca Raton meeting, the parties mutually agreed to proceed forward under the terms of the 2019 Sponsorship Agreement, with the parties agreeing to flexibility on the timing of the two $250,000.00 payments to be made by Seeman to RLL during 2019 calendar year.

25.   The day after their Boca Raton meeting, Tom Knox confirmed the parties' agreement by email dated February 8, 2019 to Seeman representatives Marshal

Seeman and Terry Sgammato, and RLL representatives Robert "Bobby" Rahal, Kevin

Warner Brian Marks, and Piers Phillips.  In his email, Tom Knox confirmed the parties'

agreement to proceed forward under the terms of the 2019 Sponsorship Agreement,

and the agreed to corporate benefits would be provided to Seeman.  Tom Knox further

confirmed that Seeman personnel were invited to attend the first race of the season in

St. Petersburg, Florida, and would be given VIP hospitality and special VIP access to

RLL's race team operations:

> "Good Morning Marshal and Terry,
>
> Thank you for your time spent yesterday meeting with me.  We are looking forward to the upcoming 2019 season and working together on further aligning RLL with Seeman Holtz both through the team and our partners.
> *******
>
> We look forward to hosting you next week and to the season launch in St. Petersburg on March 8th, 9th, 10th.  St. Pete will be a great opportunity for you to spend time with the ownership group, experience our hospitality, meet business contacts, and enjoy some great racing.
>
> Here is a digital link to the copies I left yesterday of the 2019 deliverables and team assets for Seeman Holtz:"

See Exhibit "D".  Email dated February 8, 2019 from Tom Knox to Marshal Seeman.

The digital link provided a copy of the same summary of the 2019 sponsorship

deliverables the parties had agreed to.  See Exhibit "C".  Chart of 2019 RLL

Deliverables to Seeman.

26.   The 2019 Sponsorship Agreement itself provided a long list of specific

sponsorship benefits which RLL agreed to extend to Seeman for the 2019 IndyCar

race season.  These sponsorship benefits included the following:

(i)      Seeman designed as a property and casualty insurance "partner" of RLL;

(ii)     Full season associate sponsorship of the No.15 Graham Rahal RLL entry, with associate branding on driver and crew uniforms as shown in the summary of 2019 sponsorship deliverables;

(iii)    Primary sponsorship of the No. 30 Takuma Sato RLL entry at the 2019 St. Petersburg Grand Prix for which the RLL team entry name was revised to include "Seeman Holtz Property & Casualty" logo;

(iv)     Seeman's logo placed on No. 15 Driver's racing suit in the position set forth in the 2019 sponsorship deliverables;

(v)      Seeman was provided with logo identification placement on the RLL team transporter, team equipment and crew uniforms as set forth in Exhibit "C";

(vi)     In-car camera logo placement on the No. 15 car for the Indy 500;

(vii)    Two driver in market and one out of market appearances during the 2019 IndyCar racing season;

(viii)   Driver shall be made available for one film production day;

(ix)     Six driver at track "meet & greets" for Seeman guests;

(x)      Sixty special access VIP access tickets for Seeman and its guests for the 2019 race season;

(xi)     Access to RLL trackside team hospitality;

(xii)    Inclusion on RLL social media platform;

(xiii)   Access to RLL IndyCar replica Show Car at Seeman's cost;

(xiv)    Seeman shall further have rights during the Term, to engage in any reasonable advertising and promotional activities with respect to its sponsorship activities;

(xv)     Seeman shall have the right to disseminate press release material relating to its sponsorship of RLL, and RLL will agree to include information provided by Seeman in RLL's public relations material;

27.   In response to Tom Knox's email to Marshal Seeman dated February 8, 2019, Seeman confirmed that the parties had agreed to the terms of the 2019

Sponsorship Agreement.  Indeed, Marshal Seeman wrote an email to Tom Knox on February 8, 2019, to confirm that the parties were proceeding forward under the 2019 Sponsorship Agreement:

"Tom – thank you sorry yesterday wound up being crazy. I just want you to know we want this relationship to work with the entire RLL [sic] team. We really look forward to making this productive for us all. I think that with Terry now involved we can all make this work."

See Exhibit "E".  Email dated February 8, 2019 from Marshal Seeman to Tom Knox.

28.   Similarly, the day after the February 7, 2019 meeting in Boca Raton, Terry Sgammato of Seeman, wrote an email to Tom Knox confirming that the parties had agreed to proceed forwards under the 2019 Sponsorship Agreement, and informed Tom Knox that Seeman would immediately commence to utilize its RLL sponsorship benefits at the 2019 IndyCar Series Austin, Texas race on March 24, 2019:

"Hello Tom,

Thank you for the follow up and the introduction to your team.  We are all very eager to develop a closer relationship with you all and begin working, and playing together this season.  I shall be attending the event in Austin along with Patrick Jeffords, President of our advisory group, and possibly one additional agent pending his RSVP.  As you know Marshal is unable to attend as traveling north.  We look forward to the introductions and a great event."

I've aligned some of the resources for the matters you presented and will reach out to Piers Monday to discuss further.  Have a great weekend and see you in Austin.

Terry"

See Exhibit "F".  Email dated February 8, 2019 from Terry Sgammato to Tom Knox.

**D. Seeman Personnel Proceed to Use and Enjoy Their RLL Sponsorship Benefits under the 2019 Sponsorship Agreement**

29.   In addition to Terry Sgammato, consistent with the 2019 Sponsorship Agreement entered by the parties, many other Seeman personnel took full advantage of the RLL sponsorship benefits provided to Seeman throughout the 2019 IndyCar race season.  Consistent with the 2019 Sponsorship Agreement, Seeman personnel enjoyed the special VIP access and benefits which RLL agreed to provide under the 2019 Sponsorship Agreement.   Consistent with the 2019 Sponsorship Agreement, Seeman personnel used their special RLL VIP access to invite their family members to attend the 2019 IndyCar Series races, including to the 2019 "Indy 500"; and Seeman personnel also used their RLL sponsorship benefits to entertain Seeman business associates and prospects.

30.   Consistent with the 2019 Sponsorship Agreement, RLL also promoted Seeman as RLL's exclusive property and casualty insurance "partner".   Seeman utilized the promotional and advertising benefit from having its "Seeman Holtz Property & Casualty" tradename and logo which was promoted and advertised: (i) on RLL race cars, team transporter, equipment, driver and crew uniforms during the entire seventeen (17) race 2019 IndyCar season in front of thousands of race fans at each race venue, (ii) on IndyCar Series television broadcasts, and (iii) on RLL's social media platform.   Seeman utilizer and took advantage of all of the agreed upon corporate sponsorship benefits set forth in the 2019 Sponsorship Agreement.   See Exhibit "G".  Pictures of RLL race car and driver's uniform featuring "Seeman Holtz Property & Casualty" tradename and logo.

31.   As a demonstration of RLL's good faith, RLL provided Seeman with sponsorship benefits even beyond those set forth in the 2019 Sponsorship Agreement.

At no additional charge, the RLL team entry name for the St. Petersburg race was changed to feature the Seeman Holtz name as the primary sponsor of race driver Takuma Sato's race car.  This sponsorship benefit gave Seeman greater advertising visibility to promote the Seeman brand during the St. Petersburg race.   See Exhibit "H".   Email dated February 24, 2019 from Kevin Warner to Tom Knox enclosing IndyCar Team Entry Change of Name form.

32.   In addition, Seeman personnel were also invited to attend a private RLL Partner Summit held on February 12-13, 2019, which was a value-added invitation to Seeman to attend an RLL special event designed to enable RLL sponsors to network and promote the business lines of RLL team sponsors.   As a yet another good faith gesture to Seeman, RLL's principal, Robert "Bobby" Rahal, engaged Seeman as his personal insurance broker and turned over his personal insurance business to Seeman.  Further, though not required to by the 2019 Sponsorship Agreement, RLL looked for other opportunities to develop new client business for Seeman.

33.   As Seeman personnel took advantage of the RLL sponsorship benefits during the 2019 IndyCar race season, Seeman personnel expressed to RLL that they were extremely impressed with RLL's professionalism in providing the promised sponsorship benefits and deliverables to Seeman.   At no time did any Seeman personnel complain that RLL had not delivered the promised sponsorship benefits or deliverables under the 2019 Sponsorship Agreement.

34.  To the contrary, in a series of emails written by Seeman personnel to RLL representatives, Seeman personnel were universally positive about its relationship with RLL, and often asked to attend additional races with their friends, family and

business associates.  On March 11, 2019, namesake Eric Holtz of the Seeman Holtz "family of companies" wrote an email to Terry Sgammato of Seeman and Kevin Warner of RLL (copying Tom Knox of RLL), expressing his gratitude for a positive experience after attending the IndyCar Series St. Petersburg race hosted by RLL: "Thanks again guys.  We really felt well taken care of.  I realized that I will be in So Cal with my wife and thirteen year old son during the Long Beach [IndyCar race] race. Please let me know if there will be an opportunity to attend this event with my family. We could continue our relationship building there."  See Exhibit "I" attached hereto. Email dated March 11, 2019 from Eric Holtz of Seeman to Terry Sgammato of Seeman and Kevin Warner of RLL.

35.  That same day, Terry Sgammato of Seeman wrote to Kevin Warner of RLL and to Eric Holtz of Seeman about the St. Petersburg race event, copying Tom Knox of RLL: "Thanks for reaching out, and the hospitality in St Pete.  Bummer on Satos ride, he seemed to be in good position to compete.  The RLL team has been great to work with and we appreciate your approach in business development and making the most of the race experience."  See Exhibit "J" attached hereto.  Email dated March 11, 2019 from Terry Sgammato of Seeman to Kevin Warner of RLL and Eric Holtz of Seeman and Tom Knox of RLL.

36.  In yet another instance, after attending the 2019 "Indy 500" hosted by RLL, Terry Sgammato, of Seeman wrote to Tom Knox of RLL, following the race, to compliment RLL about the VIP race experience RLL extended to both him and his guests:

"I can't begin to tell you how much I appreciate you and Kevin's personal touch. I've been around a lot of sports and marketing events and have never experienced

such genuine, and timely interactions as your entire group delivers. I sense this is part of the Rahal persona and one that really connects with our own at Seeman Holtz. Your all real PRO's and I wanted to express all the above."

See Exhibit "K" attached hereto. Email dated March 28, 2019 from Terry Sgammato, Director of Seeman Property and Casualty to Tom Knox, Director of Marketing of RLL.

37. Similarly, Dan Tepper of Seeman attended the St. Petersburg Grand Prix race with RLL and on April 16, 2019 wrote to Kevin Warner of RLL, and to Tom Knox of RLL, as follows: "Hey Kevin & Tom, What a fun day! Thank you so much for the tickets and access. Thanks again for a great day!" See Exhibit "L" attached hereto. Email dated April 16, 2019 from Dan Tepper of Seeman to Kevin Warner and Tom Knox of RLL.

38. Then there was Brian Hand of Seeman who attended a race event and afterward wrote to Tom Knox on April 15, 2019 to thank him for the "awesome" VIP experience RLL provided him at the Long Beach Grand Prix race:

"Hello Tom, I had a great time at the Long Beach grand Prix this weekend. Thank you for the opportunity to go to the Grand Prix and for the Pit and Garage passes. It was awesome being down there with drivers and being able to meet Graham Rahal. He's a really down to earth guy. It's crazy how much technology and preparation it takes for each race. It is eye opening. I'm definitely hooked on Indy Car now. I hope you guys have a successful season. I'll see you guys soon! Sincerely,"

See Exhibit "M" attached hereto. Email dated April 15, 2019 from Brian Hand of Seeman to Tom Knox of RLL.

39. Moreover, under the 2019 Sponsorship Agreement, RLL was providing Seeman with substantial and valuable corporate sponsorship benefits at a reasonable cost. Afterall, Seeman had paid $250,000.00 to be a corporate sponsor of RLL for only one race in 2018 race season—the 2018 "Indy 500." Under the 2019

Sponsorship Agreement, Seeman had agreed to pay $500,000.00 to be a sponsor of RLL for the 2019 "Indy 500" (a $250,000.00 value in and of itself), and in effect had agreed to pay $250,000.00 to be a corporate sponsor of RLL for the balance of the sixteen (16) races comprising the entire 2019 IndyCar Series season.  This included being named as a primary sponsor of RLL race driver Takuma Sato's race car at the first race of the 2019 IndyCar Series season in St. Petersburg, Florida.

**E.  RLL Invoices Seeman under the 2019 Sponsorship Agreement and Seeman Personnel Promise to Provide Payment**

40.  As previously agreed between Tom Knox of RLL and Terry Sgammato of Seeman at their February 7, 2019 Boca Raton meeting, on April 10, 2019 Veronica Lapointe of RLL, sent an RLL invoice to Marshal Seeman for $250,000.00 which provided a payment deadline of July 1, 2019.  See Exhibit "N".  Email dated April 10, 2019 from Veronica Lapointe to Marshall Seeman, with invoice attachment.  Marshall Seeman did not respond to much less dispute the RLL invoice or challenge the efficacy of Seeman's financial obligation to RLL under the 2019 Sponsorship Agreement.  Nevertheless, despite his receipt of the RLL invoice, Marshal Seeman did not have Seeman effectuate payment.

41.  Thereafter, on July 23, 2019, Barbara Koenig, RLL's Financial Controller and HR Manager, sent an email to Terry Sgammato of Seeman, and once again transmitted the same RLL invoice previously sent to Marshal Seeman on April 10, 2019.   See Exhibit "O".   Email dated July 23, 2019 from Barbara Koenig to Terry Sgammato, and invoice attachment.  Thereafter, Ms. Koenig copied this email to Eric Holtz, Brett Williams and Terry Sgammato of Seeman.  Terry Sgammato's reply email

was typical of Seeman personnel's responses on the payment issue.   In his reply email dated July 1, 2019, Terry Sgammato stated no objection to the RLL invoice or its timing or to the amount of Seeman's payment obligations under the 2019 Sponsorship Agreement.   In fact, he left the distinct impression that the RLL invoice was going to be paid.   Terry Sgammato of Seeman sent an email in reply: "Thank you Barbara. I shall forward to Marshal Seeman."   See Exhibit "P".   Email dated July 1, 2010 from Terry Sgammato of Seeman to Barbara Koenig of RLL.

42.   In fact, Marshal Seeman had already received a copy of the same invoice from Veronica Lapointe of RLL.   If Terry Sgammato did send the invoice to Marshal Seeman, the transmittal of the invoice a second time did not elicit any response from Marshal Seeman to RLL's demand for payment.   Significantly, Marshal Seeman did not take the occasion of his receipt of the resubmitted RLL invoice to make any attempt to dispute the RLL invoice or challenge the efficacy of Seeman's financial obligation to RLL under the 2019 Sponsorship Agreement.

43.   Nevertheless, approximately thirty days after receiving the second RLL invoice, Seeman still had not paid RLL's $250,000.00 invoice—or otherwise disputed its obligation to do so under the 2019 Sponsorship Agreement.   Neither did any Seeman personnel explain the payment delay.   Undeterred, Ms. Koenig of RLL followed up once again with Seeman on the outstanding balance due RLL under the 2019 Sponsorship Agreement.   On August 1, 2019, Ms. Koenig sent yet another email directly to Marshal Seeman (with prior notice to and prior approval by Terry Sgammato), and this time included two RLL invoices each for $250,000.00 or for the total amount due of $500,000.00.   Ms. Koenig mentioned in her email that: "I believe

18

that invoice 1605 was recently forwarded to you from Terry Sgammato that was due July 1, 2019." See Exhibit "Q". Email dated August 1, 2019 from Barbara Koenig to Marshal Seeman. Ms. Koenig reminded Marshal Seeman that payment on the second invoice would be due on October 1, 2019.

44.     Once again Marshal Seeman failed to respond. Moreover, Marshall Seeman did not take the occasion of receipt of the resubmitted invoice to dispute the RLL invoice or challenge the efficacy of Seeman's financial obligation to RLL under the 2019 Sponsorship Agreement.     At the same time, no other Seeman personnel responded to the RLL invoice by disputing that the invoiced amounts were due to RLL. Despite the foregoing, Seeman still did not forward payment on the initial $250,000.00 invoice.     Thereafter, on August 15, 2019, Ms. Koenig followed up for a third time on the outstanding payment directly with Marshal Seeman to inquire about the status of the payment. See Exhibit "R". Email of Barbara Koenig to Marshal Seeman dated August 21, 2019.   Once again, Neither Marshal Seeman or any other Seeman personnel voiced any objection to the RLL invoice.   At this point, Seeman was forty-five days overdue in their payment of the initial RLL invoice.

45.   In the meantime, while Seeman was delaying payment of the RLL invoice without explanation, Seeman personnel continued to expect and demand that RLL provide Seeman with the costly sponsorship benefits as agreed to under the 2019 Sponsorship Agreement.  By this time, most of those RLL sponsorship benefits that Seeman was entitled to had already been provided by RLL for Seeman's benefit.  The 2019 IndyCar Series season would soon be coming to an end. As of the time of RLL's August, 2019 invoicing to Seeman, the IndyCar Series had already staged thirteen

(13) out of a total of seventeen (17) races, including the "2019 Indy 500". Only four races remained in the entire 2019 IndyCar Series season.

46.   Though Seeman had not paid RLL for the 2019 sponsorship benefits, throughout the 2019 IndyCar Series race season, Seeman personnel demonstrated that they were completely satisfied with the performance of RLL under the 2019 Sponsorship Agreement. Seeman personnel's satisfaction about RLL's performance under the 2019 Sponsorship Agreement was consistently demonstrated by the following: (1) Seeman personnel were highly complementary about the RLL's sponsorship deliverables, and did not voice any complaints about RLL's performance under the 2019 Sponsorship Agreement; (2) Seeman personnel continued to ask RLL and RLL continued to provide 2019 IndyCar Series season sponsorship benefits to Seeman as agreed under the 2019 Sponsorship Agreement; (3) When repeatedly asked about the status of payment of the RLL invoices Seeman personnel indicated that they knew that Seeman owed RLL the billed amount of the invoices, and said that they were actively attempt to obtain payment for RLL; and (4) Seeman personnel failed to provide any grounds to explain or justify why RLL's invoices were not being paid.

47.   Indeed, the response by Marshal Seeman, the namesake and leader of the Seeman Holtz "family of companies", to the presentment of the RLL invoices on July 23, 2019 and August 1, 2019, followed this very same pattern.  Marshal Seeman did not dispute: the existence of the 2019 Sponsorship Agreement between the parties; or that the RLL invoices were entirely proper; that RLL had duly provided all of the bargained for sponsorship benefits; or that Seeman owed RLL the sponsorship

payment of $500,000.00 under the 2019 Sponsorship Agreement.  Marshal Seeman simply responded with silence when presented with the invoices, and by his silence affirmatively acknowledged—just like all the other Seeman personnel RLL had dealt with—that Seeman knew full well that that it was in debt to RLL for the sum of $500,000.00.

48.  Indeed, Marshal Seeman's total silence on the RLL invoice payment matter continued for months thereafter.  In the meantime, Seeman personnel consistently expressed to RLL personnel that they were aware that the debt was due to RLL and unanimously responded by saying that they believed that the RLL's invoices should be paid.  In fact, further admitting Seeman's liability to RLL for $500,000.00 under the 2019 Sponsorship Agreement, Seeman personnel, including Terry Sgammato, a Director of Seeman, expressed to RLL that they were doing whatever they could to get Seeman to pay the RLL invoices.

49.  At no time did Terry Sgammato, express any objection to the RLL invoices, or to RLL's performance, or challenge Seeman's payment obligations under the 2019 Sponsorship Agreement, or describe any stated objections from Marshal Seeman or any other Seeman personnel.   Instead of expressing objections, explanations, justifications or defenses, Seeman personnel only offered convenient and self-serving excuses for the delay in even responding.  Terry Sgammato's email to Tom Knox of RLL on September 20, 2019 was a typical email from Seeman personnel on the matter.  In his email, Terry Sgammato thanked Tom Knox of RLL for a business development referral to Seeman.  Terry Sgammato then remarked: "I've still no response to provide despite my efforts to move forward."

50.  Mr. Sgammato also indicated in that same email that he had been trying to reach Marshal Seeman to follow up on the payment issue.  Significantly, he suggested in the email that he already had authorization for the payment from Eric Holtz, but was purportedly waiting to obtain a payment authorization from Marshal Seeman who was preoccupied with his Mother's grave illness. See Exhibit "S".  Email dated September 20, 2019 from Terry Sgammato to Tom Knox.  However, while Seeman personnel offered excuses for the payment delay, they could not provide any explanation or defense for all of the corporate sponsorship benefits which Seeman had been more than pleased to enjoy from RLL without paying so much as one penny in return.

51.  Still, despite the Seeman personnel's repeated promise that RLL's payment would be forthcoming, Seeman continued to refuse to pay RLL's invoices. Understanding that Marshal Seeman could be busy with the illness in his family, Ms. Koenig then followed up on the payment issue to Terry Sgammato of Seeman by email dated September 26, 2019, and stated:

"Hi Terry

I know you have been speaking with Tom regarding the 2019 sponsorship invoices as Marshal is busy with his family.  I wanted to ask if both invoices, total of $500,000, could be paid now.  The first invoice of $250,000 was due 8/1/19, and the second invoice of $250,000 is due 10/1/19.  I am trying to wrap up the season end accounting so wanted to get an idea of the timing for the payment.

Thank you,

Barb"

See Exhibit "T".  Email dated September 26, 2019 from Barbara Koenig to Terry Sgammato.

52.  By email dated that same day, Terry Sgammato wrote to Tom Knox, and again promised that the payment due RLL would be forthcoming.  In his email to Tom

Knox, Terry Sgammato stated that he had just spoken to Eric Holtz "regarding the billing", and that "they will make arrangements to respond to invoice . . ."   See Exhibit "U".  Email dated September 26, 2019 from Terry Sgammato of Seeman to Tom Knox of RLL.

53.   Nevertheless, despite Seeman personnel's repeated promise to pay the RLL invoices, and their repeated acknowledgment of their obligation to do so, Seeman personnel took steps over the next two months to "buy themselves" the opportunity to further delay the payment of the invoices.  It appeared increasingly that Seeman's strategy was to "work the clock" so that they could use up the balance of the RLL's sponsorship benefits under the 2019 Sponsorship Agreement—all without paying so much as one penny of the $500,000.00 balance due to RLL.

54.   The October 1, 2019 payment deadline for the second of the two $250,000.00 RLL invoices came and went without Seeman providing payment or providing RLL with a date by which either the first or second invoice would be paid. The 2019 Indy Car Series season was now over.  RLL had provided Seeman with seventeen (17) races worth of corporate promotional and advertising benefits and VIP hospitality and access for an entire 2019 IndyCar Series season.

55.   At this point, a period of six (6) months had elapsed since Veronica Lapointe of RLL had sent RLL's initial invoice of $250,000.00 to Seeman with a payment due deadline of July 1, 2019, and still Seeman still managed to take all of these promotional benefits for "Seeman Holtz Property & Casualty" from RLL, and failed to pay Rahal so much as one penny of the $500,000.00 sponsorship fee or attempt to provide any explanation or excuse or their defense for their failure to do so.

56.  During the six (6) month period since being presented with those invoices, Seeman personnel, including Marshal Seeman and Eric Holtz, the two principal shareholders and officers of the so called Seeman Holtz "family of companies" did not dispute the existence of the 2019 Sponsorship Agreement or Seeman's financial obligations to RLL thereunder.   This was yet more evidence—as if any more were needed—that Marshall Seeman and Eric Holtz and Seeman had absolutely no defense to RLL's now six (6) month old demand to Seeman for payment under the 2019 Sponsorship Agreement.  If Seeman had a defense it would not have taken six (6) months for them to communicate a defense to RLL.

57.   In further confirmation of the binding 2019 Sponsorship Agreement between RLL and Seeman, on November 11, 2019, Tom Knox of RLL sent an email to Eric Holtz and stated in part as follows: "My question to you is that we have an agreement for 2018 and 2019.  How do you suggest we resolve 2019 [payment issue]".  See Exhibit "V". Email dated November 11, 2019 from Tom Knox to Eric Holtz.  On November 13, 2019, Tom Knox sent a similar email to both Marshal Seeman and Eric Holtz in which he again referenced and confirmed the existence of the "2019 contract", and sought to resolve the collection of the outstanding payment. See Exhibit "W".   Email dated November 13, 2019 from Tom Knox to Marshal Seeman and Eric Holtz.

58.  Indeed, in multiple telephone calls and emails between Seeman and RLL personnel, in month after month during 2019, Seeman personnel affirmed Seeman's $500,000.00 payment obligation to RLL, and Seeman personnel unanimously

promised and made representations and statements that were intended to and caused RLL personnel to believe that payment would be forthcoming.

**F. Running out of Excuses Seeman Personnel Went So Far as to Desperately Claim that Payment Was Actually Effectuated to RLL—It wasn't**

59.   After seven (7) months of RLL pursuing Seeman for payment of the $500,000.00 due, it finally appeared that there had been a breakthrough.   In a telephone call between David Anderson of Seeman and Tom Knox of RLL held on November 22, 2019, David Anderson finally confirmed to Tom Knox that Seeman would pay RLL $250,000.00 the following week, and the balance of $250,000.00 in December, 2019 before the end of the year.   That same day, David Anderson sent an email to Tom Knox and said: "Thanks for taking the time to discuss our relationship today.   It is evident that there is a strong desire on both sides to continue working together, and to make this profitable for both sides."   See Exhibit "X".   Email dated November 22, 2019 from David Anderson to Tom Knox.   The "profitable for both sides" choice of language was certainly rich in irony given that for the entire 2019 IndyCar Series season, as between Seeman and RLL, Seeman was the only party who had "profited" by absconding with $500,000.00 in RLL sponsorship benefits without paying anything in return.   "Profitable" indeed.

60.   Thereafter, in another email sent by David Anderson of Seeman to Tom Knox of RLL dated November 27, 2019, David Anderson informed Tom Knox, that he had in effect "taken point" on the Seeman and RLL relationship, and would be following up on the status of the $500,000.00 Seeman's payment due to RLL.   See

Exhibit "Y". Email dated November 27, 2019 from David Anderson to Tom Knox. This was yet another instance in an ever growing number of instances where Seeman personnel had acknowledged that Seeman was legally responsible to pay RLL the outstanding $500,000.00 due.

61. Several days later, David Anderson went so far as to inform Tom Knox that he had successfully "resolved" Seeman's funding impasse. This was yet another acknowledgement that the fault lay entirely on the Seeman side. **On December 2, 2019, David Anderson informed Tom Knox that a bank wire covering the $500,000.00 invoices had been sent to RLL, and that he was waiting on his accounting department to provide confirmation of the bank wire transfer.** The supposed "confirmation" of the bank wire was yet more conclusive proof that Seeman had fully and finally acknowledged its debt and payment obligation to RLL under the 2019 Sponsorship Agreement. Afterall, if Seeman had no payment obligation to RLL, or had a defense to the payment of the RLL invoices, there would be no reason for David Anderson to represent to Tom Knox that Seeman had finally made the promised payment.

62. Incredibly, despite his representations to Tom Knox that the Seeman bank wire to RLL was being effectuated, David Anderson's promised proof of wire transfer from Seeman to RLL never materialized. Neither did David Anderson's promised funds. Instead, Tom Knox advised David Anderson by email dated December 3, 2019 as follows: "Hi Dave, I know you are still in meetings but wanted to let you know that Fifth Third [Bank] did not receive notification nor confirmation of the wire transfer we discussed. Please let us know your thoughts once you have a chance to review." See

Exhibit "Z" attached hereto.  Email from dated December 3, 2019 from Tom Knox of RLL to David Anderson of Seeman.

63.  David Anderson responded to Tom Knox by email the same day and said that he was surprised by the news as he had been informed that the bank wire to RLL had been sent.  In his email David Anderson stated: "Yeah I am still in a meeting.  My initial thought is what the hell is going on and who I'm going to call soon as I get out to find out that answer."  See Exhibit "AA" attached hereto.  Email dated December 3, 2019 from David Anderson of Seeman to Tom Knox of RLL.  Even David Anderson had himself run out of excuses for Seeman's failure to make the promised payment to RLL.

64.  Tom Knox responded by sending another email to David Anderson that same day: "Okay.  Bobby [Rahal] wants to know/understand if what we discussed last weekend regarding 2019 resolution approved.  Is this a bank issue?  Thank you Dave."  See Exhibit "BB" attached hereto.  Email dated December 3, 2019 from Tom Knox of RLL to David Anderson of Seeman.  David Anderson responded that same day to Tom Knox in another email: "OK, Ive talked to a few folks, and it appears to be a bank issue.  I am trying to find out what it is, and how I can fix it.  I will do my best to get back to you today."  See Exhibit "CC" attached hereto.  Email dated December 3, 2019 from David Anderson of Seeman to Tom Knox.

65. Thus, Dave Anderson of Seeman was again confirming, even after his claimed personal investigation of the bank wire problem and speaking to his "few folks", that the Sponsorship Agreement was both confirmed and ratified in all respects by Seeman, that Seeman had received its $500,000.00 of sponsorship benefits from

RLL, that Seeman personnel had no complaints about RLL's performance under the 2019 Sponsorship Agreement, and that the Seeman payment was not only due, but was being made by Seeman's bank. See Exhibit "CC".

66.   In reality, David Anderson's claim that the promised Seeman payment of the $500,000.00 had been sent to RLL, and subsequently that the inexplicable bank wire delay was solely due to banking error, were just more misrepresentations upon a series of misrepresentations by Seeman and Seeman personnel on the payment issue.  In the end, and after the months and months, and all of the emails and all of their feigned stories and thinly veiled excuses, Marshal Seeman, Eric Holtz, Terry Sgammato, David Anderson, Dan Tepper, and Brian Hand, among others at Seeman's "family of companies", simply decided to take advantage of and illicitly abscond with all of the RLL sponsorship benefits—both from a personal and professional standpoint—without paying for them.

67.   RLL spent millions of dollars in reliance upon Seeman's contractual promise and course of conduct to make the payments due under the 2019 Sponsorship Agreement.   RLL paid for the 2019 IndyCar Series race entrant fees, and paid each of the race promoter's fees to permit the RLL race team access to the track paddock to stage its team operations during the race weekend.  RLL paid to place the Seeman tradename on the RLL race car, team transporter, race equipment, and the driver and crew uniforms.  RLL paid its driver and crew.  RLL brought the race cars and team transporters to each of the seventeen (17) races during the 2019 IndyCar Series race season.  RLL purchased race gas, tires and race car spare parts. RLL set up the team hospitality facilities at each of the seventeen (17) race tracks, and

paid for the hospitality servers and the food and drink to serve Seeman personnel. RLL purchased the VIP credentials and tickets to be used and enjoyed by Seeman personnel, and their family, friends and business associates.  RLL paid for the in-car camera for the 2019 "Indy 500".   RLL purchased the hotel rooms for the team members to stay.  RLL paid for the transportation of the driver, the crew and the race car, team transporter, and equipment to each of the seventeen (17) race tracks during the 2019 IndyCar Series season.

68.  RLL staged special events to promote Seeman's business.  RLL permitted Seeman to promote its brand to the world in association with RLL's tradename, and take pictures of the race driver and race car with Seeman's name depicted on the race car and RLL team uniforms to be used in Seeman promotional materials and in global media.  RLL gave Seeman a license to use the RLL name in Seeman's promotions and advertising.  RLL promoted Seeman to the press and social media.  RLL procured an insurance policy to cover potential claims.   RLL paid for all of the sponsorship deliverables set forth in the 2019 Sponsorship Agreement, and in the 2019 Sponsorship Deliverables chart.

69.  Despite RLL's reliance on Seeman's promise to pay $500,000 for all of the foregoing benefits, Seeman paid nothing—not so much as one penny of the $500,00.00 Seeman was obligated to pay for all of sponsorship benefits which RLL paid for and fully provided to RLL.  RLL abided by its agreement with Seeman. Significantly, even Seeman personnel agreed that RLL did.  Yet Seeman did not abide by its agreement with RLL—not one bit.

70. RLL has suffered substantial monetary damages as a result of Seeman's wrongful conduct. RLL would not have dedicated its valuable time and energy or expended funds to promote, advertise and publicize Seeman's tradename and logo, provide VIP hospitality and exclusive team access, or waste its time and resources to support Seeman's business interests, had RLL known that Seeman had intended to pay RLL nothing in exchange. RLL only incurred such expenses for Seeman's benefit with the full expectation that Seeman intended to pay RLL the agreed upon $500,000.00 sponsorship fee as Seeman had agreed to pay under the 2019 Sponsorship Agreement and by Seeman's course of conduct. Furthermore, Seeman's misconduct damaged RLL given the opportunity cost. If RLL had known that Seeman had no intention of complying with its financial obligations under the 2019 Sponsorship Agreement then RLL would have sought out other potential corporate sponsors to replace Seeman.

## G. Even Seeman's Lawyers Were Unable to Advance any Defense For Seeman's Wrongful Conduct

71. Then the Seeman payment problem was turned over to the Seeman and RLL lawyers. On or about December 11, 2019, RLL's attorney, Jack Bjerke, Esq. of Baker Hostetler, wrote a letter to Marshal Seeman and stated as follows:

"Dear Mr. Seeman:

As you are aware, Seeman Holtz, LLC entered into a Sponsorship Agreement with Rahal Letterman Lanigan Racing, LLC ("RLLR") for the 2019 IndyCar Season. RLLR fully complied with all of the terms and conditions of the Sponsorship Agreement and provided Seeman Holtz with all of the benefits that were included in the Agreement. Pursuant to the terms of the Agreement, Seeman Holtz has agreed to pay RLLR $500,000.00. Although I am aware of many discussions among the parties, this matter has not been resolved. This is

a significant issue for RLLR, and they intend to pursue all of their legal rights to collect on this account.

I would appreciate if you would put me in contact with your counsel in order that we can attempt to resolve this matter amicably and avoid litigation.   Please respond to this letter on or before December 13, 2019."

See Exhibit "DD".  Letter from Jack Bjerke Esq. to Marshal Seeman dated December 11, 2019.

72.   Marshall Seeman did not respond to Mr. Bjerke's letter or dispute any of the statements that Mr. Bjerke made, including that RLL had complied with its obligations under the 2019 Sponsorship Agreement, and that Seeman "has agreed to pay RLLR $500,000.00".   Marshal Seeman by his continued silence on this matter, in the face of Mr. Bjerke's contention that Seeman was owed these funds to RLL, had conceded the obvious.   Seeman owed RLL the money and had no defense for their failure to pay the promised funds to RLL.

73.   Seeman's in-house legal counsel, Michael Kaminer, Esq., did speak to Jack Bjerke as he had requested on or about December 12, 2019.   During their telephone call Mr. Kaminer did not dispute any of the assertions stated in Mr. Bjerke's letter to Marshal Seeman dated December 11, 2019.  Instead, Mr. Kaminer simply said that he would be in touch to resolve the issue.  Mr. Kaminer did not formally respond by email or letter to Mr. Bjerke's letter to Marshal Seeman to deny Mr. Bjerke's assertion that Seeman owed RLL the $500,000.00 sponsorship fee.

74.   When he did not hear back from Mr. Kaminer as he had promised, Mr. Bjerke followed up his call with Mr. Kaminer with an email dated December 13, 2019 in which he again demanded payment of the $500,000.00 due RLL.  See Exhibit "EE".

Email of dated December 13, 2019 from Jack Bjerke, Esq. to Michael Kaminer, Esq. In his email, Mr. Bjerke attached a copy of the 2018 Sponsorship Agreement and a copy of the 2019 Sponsorship Deliverables chart, which described all of the sponsorship benefits which RLL provided to Seeman. Mr. Kaminer did not respond to Mr. Bjerke's email or dispute any of Mr. Bjerke's assertions including that Seeman owed RLL $500,000.00.

75. Another month passed and there was still no follow up response from Mr. Kaminer. So Mr. Bjerke followed up with a call to Mr. Kaminer. During their call Mr. Kaminer did not offer Mr. Bjerke any excuse for or defense of Seeman's refusal to pay RLL the $500,000.00 due. All Mr. Kaminer could manage to say to Mr. Bjerke was that the matter had been turned over to outside counsel, Brian Casey, Esq., of Locke Lord LLP. On or about January 27, 2020, Mr. Bjerke spoke by telephone to Mr. Casey about the matter, and he requested that Mr. Bjerke provide some background documentation on the issue. Mr. Bjerke complied with Mr. Casey's request.

76. Then there was silence from Seeman's outside attorney, Mr. Casey. Mr. Bjerke followed with a telephone call to Mr. Casey on February 7, 2020. In their call Mr. Casey said that he had not heard from Seeman and he promised to follow up. However, despite his promise to follow up, Mr. Casey never got back to Mr. Bjerke by telephone call, email or letter with the promised follow up. Just like Mr. Kaminer, Seeman's in-house attorney, Seeman's outside attorney Mr. Casey did not dispute any of the claims made by Mr. Bjerke in his letter to Marshall Seeman sent two months before. He too did not deny that Seeman was liable to RLL for $500,000.00. Just like Mr. Kaminer, Mr. Casey could not manage to offer any excuse or defense for

Seeman's failure to pay RLL the funds due.  However, both attorneys admitted by their silence that RLL had fully performed its obligations under the 2019 Sponsorship Agreement, and that Seeman was fully responsible to pay its $500,000.00 debt to RLL.

## COUNT I
## BREACH OF AGREEMENT
## AGAINST DEFENDANT SEEMAN AND DEFENDANT SEEMAN HOLTZ LLC

77.   Plaintiff incorporates paragraphs 1 through 76 as set forth above.

78.   Defendant Seeman Holtz LLC, by and through its President, Marshal Seeman, and acting as an agent and for the benefit of Defendant Seeman, entered a 2018 Sponsorship Agreement with Plaintiff RLL, which was subsequently supplemented by the 2019 Sponsorship Agreement entered by the parties, and which was further adopted and ratified by the course of conduct of the parties.   RLL fully performed under the 2019 Sponsorship Agreement, and provided corporate sponsorship benefits to Defendant Seeman and Defendant Seeman Holtz LLC.

79.   Pursuant to the 2019 Sponsorship Agreement, RLL agreed to and did provide in its course of dealing with both Defendants, a variety of sponsorship benefits in conjunction with RLL race team's participation in the 2019 IndyCar Series Championship.  Defendant Seeman and Defendant Seeman Holtz LLC, by its course of dealing with RLL, requested, accepted and took advantage of the corporate sponsorship benefits set forth in the 2019 Sponsorship Agreement.

80.   More specifically, at the request of Defendant Seeman and Defendant Seeman Holtz LLC, Plaintiff RLL provided the agreed upon sponsorship benefits to Seeman set forth in paragraphs 2, 3, and 4 of the 2019 Sponsorship Agreement.

Plaintiff RLL provided the following sponsorship benefits among others: (i) designated Seeman as a promotional "partner" of RLL for the IndyCar Series, (ii) provided brand/logo identification on RLL's race car for the 2019 IndyCar Series St. Petersburg Grand Prix race, as set forth in Exhibit "A" to the 2019 Sponsorship Agreement, (iii) provided in-car camera placement of the Seeman logo on RLL's No. 15 car for the 2019 "Indy 500"; and (iv) provided signage on the RLL race car, team race car transporter, team equipment, driver and crew uniforms as set forth in Exhibit "C" of the 2019 Sponsorship Agreement.

81.    In consideration for the provision of the RLL sponsorship benefits, at paragraph 6 of the 2019 Sponsorship Agreement, Defendants Seeman and Seeman Holtz LLC, promised to pay a sponsorship fee to RLL of $500,000.00 in two payments each of $250,000.00 ("Sponsorship Fee").

82.    Plaintiff RLL abided by the terms of the parties' 2019 Sponsorship Agreement over the entire 2019 IndyCar Series race season, and fully performed RLL's obligations thereunder.

83.    On or about April 10, 2019 Plaintiff RLL duly invoiced Defendant Seeman Holtz LLC, for the payment of the $500,000.00 Sponsorship Fee.  Defendant Seeman and Defendant Seeman Holtz LLC acknowledged receipt of this and subsequent RLL invoices, and multiple Seeman and Seeman Holtz LLC personnel represented to RLL on multiple occasions between August and December 2019 that Defendant Seeman recognized that it owed RLL the $500,000.00 Sponsorship Fee, and that payment would be effectuated.  Indeed, on December 2, 2019 David Anderson of Defendant Seeman informed Tom Knox of RLL that the Sponsorship Fee was duly authorized to

be paid by Defendant Seeman, and that Defendant Seeman's bank had been instructed to effectuate payment

84.   Despite David Anderson's representation that the Sponsorship Fee was being paid by Defendant Seeman, the Sponsorship Fee was never paid by Defendant Seeman or by Defendant Seeman Holtz LLC.  As a consequence, Defendant Seeman and Defendant Seeman Holtz LLC, breached the 2019 Sponsorship Agreement as follows:

a.   By demanding and accepting the sponsorship benefits from RLL without paying for them;

b.  Failing to make the Sponsorship Payment;

c.  Failing to act in good faith in compliance with Defendant Seeman's payment obligation under the 2019 Sponsorship Agreement;

d.  Continuing to demand and accept sponsorship benefits from RLL under the 2019 Sponsorship Agreement without paying the Sponsorship Fee;

e.   Making misrepresentations of the status of the payment of Sponsorship Fee, and the date when it would be effectuated;

f.   By concealing its true intentions to benefit from the provision of the sponsorship benefits without paying RLL the Sponsorship Fee;

85. Plaintiff has properly and fully performed under the 2019 Sponsorship Agreement, and all other contingencies have been performed or waived or excused by Defendant Seeman and Defendant Seeman Holtz LLC.  As a result of Defendant Seeman and Defendant Seeman Holtz LLC's breach of the parties' 2019 Sponsorship Agreement, Plaintiff has been substantially damaged.

86.     Both the 2018 Sponsorship Agreement and the 2019 Sponsorship Agreements at paragraph 13 (i) includes an attorney fee and cost provision under which Plaintiff RLL is entitled to an award of attorney fees and costs for bringing this litigation.

WHEREFORE, the Plaintiff requests that this Court enter judgment in favor of the Plaintiff, and against the Defendant Seeman and Defendant Seeman Holtz LLC, for damages together with interest and costs, for a jury trial of all issues triable as of right  by jury, for an award of attorney fees and costs, and for such other relief as the Court deems just and equitable.

**COUNT II**
**UNJUST ENRICHMENT AGAINST**
**DEFENDANT SEEMAN AND DEFENDANT SEEMAN HOLTZ LLC**

Plaintiff incorporates paragraphs 1 through 76 as set forth above.

87.   Defendant Seeman and Defendant Seeman Holtz LLC, acting through its President, Marshal Seeman, and other personnel, have individually and collectively maintained a business relationship with Plaintiff.

88.   Plaintiff RLL has conferred a benefit upon Defendant Seeman and Defendant Seeman Holtz LLC, including but not limited to, providing said Defendants with corporate sponsorship benefits as set forth in the 2019 Sponsorship Agreement.

89.  Defendant Seeman and Defendant Seeman Holtz LLC sought out and was provided with the sponsorship benefits from Plaintiff RLL, but said Defendants refused to pay the Sponsorship Fee as invoiced by RLL.  Defendant Seeman and Defendant Seeman Holtz LLC knowingly accepted and took advantage of the sponsorship benefits from Plaintiff RLL, and wrongfully used these benefits to subsidize the

business interests of Defendant Seeman and Defendant Seeman Holtz LLC without paying the agreed compensation to RLL.

90.   Plaintiff has made multiple demands for the payment of the Sponsorship Fee and Defendant Seeman and Defendant Seeman Holtz LLC have refused to comply and pay RLL the Sponsorship Fee.

91.   The Defendant Seeman and Defendant Seeman Holtz LLC have been unjustly enriched at the expense and to the detriment of Plaintiff RLL.

92.   Defendant Seeman and Defendant Seeman Holtz LLC knowingly accepted the benefit conferred upon it by RLL as is set forth above.

93.   It would be inequitable to allow Defendant Seeman and Defendant Seeman Holtz LCC to retain the benefit conferred upon said Defendants without the satisfaction of the payment of the agreed upon compensation due Plaintiff RLL.

WHEREFORE, the Plaintiff RLL requests that this Court enter judgment in favor of the Plaintiff RLL, and against the Defendant Seeman and Defendant Seeman Holtz LLC, for damages together with interest and costs, for a jury trial of all issues triable as of right by jury, for an award of attorney fees and costs, and for such other relief as the Court deems just and equitable.

### COUNT III
### PROMISSORY ESTOPPEL AGAINST
### DEFENDANT SEEMAN AND DEFENDANT SEEMAN HOLTZ LLC

94.   Plaintiff incorporates paragraphs 1 through 76 as set forth above.

95.   Defendants Seeman and Seeman Holtz LLC wrongfully induced Plaintiff RLL to enter into the 2019 Sponsorship Agreements under which Defendant Seeman

was provided with sponsorship benefits from Plaintiff RLL during 2019 IndyCar Series race seasons.

96.  In consideration for Defendant Seeman being provided with the sponsorship benefits under the 2019 Sponsorship Agreement, Defendant Seeman and Defendant Seeman Holtz LLC promised to pay Plaintiff RLL the Sponsorship Fee.  Plaintiff RLL provided all of the agreed upon sponsorship benefits to Defendant Seeman and Defendant Seeman Holtz LLC during the 2019 IndyCar Series race season.  However, despite their agreement to pay the Sponsorship Fee for these services, Defendant Seeman and Defendant Seeman Holtz LLC refused to pay RLL for the sponsorship benefits as they had specifically agreed, all to the benefit of Defendant Seeman and Defendant Seeman Holtz LLC, and to the detriment of Plaintiff RLL.

97. In reliance on the promises of Defendant Seeman, and Defendant Seeman Holtz LLC, Plaintiff RLL provided sponsorship benefits totaling $500,000.00 in value to Defendant Seeman, and Defendant Seeman, and Defendant Seeman Holtz LLC, knowingly accepted such sponsorship benefits.  Plaintiff RLL has repeatedly demanded payment of the Sponsorship Fee from Defendant Seeman and Defendant Seeman Holtz LLC, but these Defendants have wrongfully refused to pay the Sponsorship Fee and continue to wrongfully refuse to pay the Sponsorship Fee to the present.

98. Defendant Seeman and Defendant Seeman Holtz LLC have failed to fulfill their promises to Plaintiff RLL as set forth herein.

99. As a result of the wrongful actions of Defendant Seeman and Defendant Seeman Holtz LLC, Plaintiff RLL has suffered substantial monetary damages.

WHEREFORE, the Plaintiff RLL requests that this Court enter judgment in favor of the Plaintiff RLL, and against Defendants Seeman and Seeman Holtz LLC, for a jury trial for all issues triable as of right by jury, and for damages together with interest and costs, for an award of attorney fees and costs, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

*s/Peter J Yanowitch*
Peter J. Yanowitch, Esq.
Attorneys for Plaintiff
Yanowitch & Co. LLP
232 Andalusia Avenue. Suite 202
Coral Gables, Florida 33134
primary-mail: peter@yancolaw.com
(305) 443-2100
Florida Bar No. 337196

# EXHIBIT "A"

## SEEMAN HOLTZ, LLC

## MOTORSPORTS SPONSORSHIP AGREEMENT

This Motorsports Sponsorship Agreement (this "MSA" or "Agreement") is dated as of May 24, 2018 (the "Effective Date") and sets forth parameters for a binding agreement by and between Rahal Letterman Lanigan Racing, LLC ("RLL"), an Indiana limited liability company having its principal place of business at 485 Southpoint Circle, Suite 900, Brownsburg, Indiana 46112, and Seeman Holtz, LLC[1] ("Seeman"), having its principal place of business at 301 Yamato Road, Suite 2222, Boca Raton, Florida 33431 (individually each a "Party" and collectively the "Parties"), regarding sponsorship for the 2018 Indianapolis 500 and the 2019 IndyCar Series Races.

**WHEREAS**, RLL is a leading team in IndyCar Series; and

**WHEREAS**, RLL has developed expertise in the areas of automobile racing technology and in the commercial marketing of automobile racing sponsorship associations; and

**WHEREAS**, Seeman is desirous of a sponsorship association with RLL's entry for the 2018 Indianapolis 500 ("Indy 500") and the 2019 IndyCar Series Races.

**NOW THEREFORE**, in consideration of the mutual promises, agreements and undertakings set forth in this Agreement, the sufficiency of which each Party acknowledges, the Parties agree as follows:

1) **Term of the Agreement:**

The term of this Motorsports Sponsorship Agreement shall commence on the execution thereof and if continued by the Parties continue through the completion of the 2019 IndyCar Series Races or 90 days after the Indy 500 if not continued by the Parties (the "Term").

The parties have mutually agreed to discuss and use their best efforts to finalize an agreement with respect to a sponsorship arrangement with RLL for the 2019 IndyCar Series Races on Graham Rahal's race car for a payment by Seeman to RLL of $500,000. The Parties agree that they will use their best efforts for up to thirty (30) days following the 2018 Indy 500 to finalize an arrangement for 2019 either by amending this MSA or entering into a new MSA for the 2019 IndyCar Series Races on Graham Rahal's race car.

2) **Sponsorship Designation:**

Designation. RLL hereby designates Seeman as a Seeman Holtz Property & Casualty Insurance Partner of RLL and RLL's exclusive insurance industry sponsor.

3) **Brand/Logo Identification:**

Livery. RLL will provide logo ID placement on the No. 30 IndyCar substantially in the form shown in Exhibit A of the Agreement. In addition, RLL shall arrange for Seeman's logo to be an in-camera placement logo on the in-car camera on Takuma Sato's car for the Indy 500. In addition, Seeman's logo shall be placed on Takuma Sato's racing suit in the position set forth on

---

[1] Is this the correct SH entity?

Exhibit B.[2]  No additional IndyCar logo placement shall be provided by RLL to Seeman during the Agreement.

4) **Advertising and Promotional Rights:**

    a)    During the Term, RLL shall provide Seeman with a limited global license to use, display, and identify the names and/or likenesses of the RLL team, driver, crew, logo, photos of car, crew uniforms, and other designs (the "RLL Marks") and refer to the Sponsorship in connection with its advertising, marketing, and promotional campaigns of Seeman, subject to the approval of RLL which will not be unreasonably conditioned, withheld or delayed by RLL.

        • In turn, Seeman agrees to provide the same limited rights as listed above, for use of Seeman's logos and logo usage, with its advertising, marketing and promotional companies.

    b)    Seeman and its affiliates will have the right during the Term, to engage in any reasonable advertising and promotional activities with respect to Seeman's sponsorship of RLL in the IndyCar Races, subject to the approval of RLL, which will not be unreasonably conditioned, withheld or delayed.

    c)    Seeman and its affiliates will have the right to prepare and disseminate press release materials relating to Seeman's sponsorship of RLL, and RLL will agree to include information provided by Seeman to RLL in RLL's public relations material. Both Parties prior to release must approve all press releases related to such sponsorship in writing and such approval will not be unreasonably conditioned, withheld or delayed.

5) **RLL General Responsibilities:**

    **a)**    RLL at its cost will (i) enter and maintain a competitive IndyCar entry driven by Takuma Sato (or a substitute driver); (ii) provide all necessary support vehicles; and (iii) expend its reasonable best efforts to win the Indy 500.

    **b)**    RLL will work in good faith with Seeman to develop mutually approved press releases to announce the Seeman's sponsorship of RLL for the Indy 500. All press releases must be approved by both parties prior to release.

    c)    RLL shall provide Seeman with one (1[3]) invitation to RLL's private pre-race party to be held on May 25, 2018, access to RLL's track hospitality for the 2018 Indy 500 and one (1) suite ticket in RLL's Indy 500 suite.

    d)    RLL shall provide a dedicated account manager to implement Seeman's sponsorship of RLL pursuant to this Agreement.

6) **Sponsorship Fees, Products & Services:**

---

2 What about pit crew and pit area?
3 Go for 2?

2

As consideration for the sponsorship, advertising and promotional rights defined and granted by RLL to Seeman, Seeman shall pay RLL a sponsorship fee of $250,000 payable on or before May _____, 2018.

**Use of Seeman's Trade Names and Trademarks by RLL:**

    a)    *Grant of Rights*. During the Term, Seeman hereby grants RLL a limited, non-exclusive license to use Seeman's trade names and trademarks ("Sponsor Marks") used for the purpose of executing the racing program and for advertising and promoting the Sponsorship pursuant to the terms and conditions of this Agreement. In addition, for use of Seeman logos and logo usage in connection with any [RLL Team Merchandise][4] made for sale to the fans on-site at IndyCar race events and/or on our exclusive RLL e-commerce website. All advertising and promotional material produced, published, broadcast, displayed or exhibited by RLL related to Seeman shall be approved in writing by Seeman and acknowledge Seeman in a manner agreed to by both Parties. Unless explicitly provided for herein, RLL's use of Seeman trade names and trademarks is subject to the written approval of Seeman, which approval will not be unreasonably delayed. Upon the expiration/termination of this Agreement or upon request of Seeman, for any reason whatsoever, all of RLL's rights to use the Sponsor Marks shall immediately terminate and RLL shall discontinue immediately all uses of the Sponsor Marks. RLL shall be permitted, however, to sell all merchandise denoting Sponsor Marks which already was produced and in stock at the expiration of this Agreement. All rights granted above shall be subject to Seeman's prior approval of the usage by RLL of Seeman's Sponsor Marks and logos.

RLL hereby represents and warrants to Seeman as follows:

- RLL is authorized to enter into this MSA and this MSA does not conflict or interfere with any other agreements with third parties covering a similar subject matter;

- RLL has the full right and authority to grant Seeman rights and benefits as set forth herein;

- all services, activities and obligations to be furnished and performed by RLL hereunder shall be performed in a lawful, professional and workmanlike manner;

- RLL shall apply and secure any and all permits and/or licenses which may be necessary for the performance of its obligations hereunder;

- RLL owns or otherwise has the rights to the RLL Marks and has the right to allow Seeman to use the RLL Marks as provided for herein;

- RLL shall be solely responsible for any and all payments to suppliers and manufacturers normally associated with the physical preparation of the car. In addition should RLL incur any rights fees from use of associated RLL branding then RLL shall be liable for payment of such rights fees.

Seeman hereby represents and warrants to RLL as follows:

- it is authorized to enter into this MSA and this MSA does not conflict or interfere with any other agreement with third parties covering similar subject matter;

---

4 Not defined and not committed in Section 3.

- all services, activities and obligations to be performed by Seeman hereunder shall be performed in a lawful, professional and workmanlike manner;

- Seeman owns or otherwise has the rights to the Sponsor Marks; and the use of the Sponsor Marks as approved by Seeman will not infringe the copyrights, trademarks, service marks, and trade secrets of any third party.

- Seeman has the financial capability to fulfill all of its commitments as outlined herein.

**b)**   *Goodwill.*  RLL recognizes the great value of the goodwill associated with Seeman's intellectual property.  RLL recognizes that Seeman has an interest in maintaining and protecting the image and reputation of its intellectual property and that Seeman intellectual property must be used by RLL in a manner consistent with the standards established by Seeman.

**c)**   *Termination of Use.*  RLL shall immediately, on the termination or expiration of this Agreement or upon request of Seeman, for any reason whatsoever, cease to use or otherwise refer to Seeman trade names and trademarks or logos.

**7)   No License:**

Except as expressly provided herein, no property, license, permission or interest of any kind in or to the use of any trademark, trade name, color combination, insignia or device owned or used by either RLL or Seeman pursuant to this Agreement is or is intended to be given, assigned to, or transferred to or acquired by one party to the other party by the execution, performance or nonperformance or this MSA or any part thereof.  Each party agrees that it shall in no way contest or deny the validity of, or the right or title of the other party in or to such trademark, trade name, color combination, insignia or device, by reason of this MSA and shall not encourage or assist others directly or indirectly to do so, during the Term of this Agreement and thereafter. In addition, neither party shall utilize any such trademark, trade name, color combination, insignia or device in any manner that would diminish its value or harm the reputation of the other party.

**8)   Termination:**

**a)**   Events of Default.  Either party may terminate this MSA immediately if a Default, as defined below, by the other party has occurred and is continuing by giving written notice thereof to the defaulting party.  The term **"Default"** shall mean the occurrence of any of the following events: (a) a failure by a party to comply with or perform any material provision or condition of this MSA and failure to cure said noncompliance or nonperformance for two (2) days after service of written notice thereof to such party; (b) a party becomes insolvent, is unable to pay debts as they mature or is the subject of a petition in bankruptcy, whether voluntary or involuntary, or of any other proceeding under bankruptcy insolvency or similar laws; makes an assignment for the benefit of creditors; is named in or its property subject to a suit for appointment of a receiver; or is dissolved or liquidated; or (c) any warranty made in this MSA is breached or is false or misleading in any material respect.

**9)    Limitation of Liability:**

No Party shall be liable to any other Party or to any third party for any incidental, special, consequential, or punitive damages, including without limitation lost profits suffered (i) because of any failure to perform any obligation under this Agreement, or (ii) because of any act, error or omission, unless such damage was caused by the fraud, gross misconduct, intentional misconduct or unlawful conduct of a Party or any of its employees or agents.

**10)    Indemnity:**

a)    During the Term and following the expiration or any termination of this Agreement, RLL shall indemnify and hold Seeman, together with their parent companies, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, successors and assigns, harmless from and against any and all judgments, losses, damages, liabilities, claims, demands, suits, costs, actions or proceedings, expenses (including reasonable attorneys' fees, expert witness fees, and allocable costs of in-house counsel) which may be asserted against or incurred by any of them, arising out of, related to or in connection with:

- breaches any representation or warranty made by RLL herein;

- any infringement upon any third party's trademarks, service marks, logos, copyrights, trade secrets, moral rights, privacy rights, or publicity rights in connection with Seeman use and/or distribution of the RLL Marks pursuant to this MSA;

- arises because of any other acts, errors, failures to act, representations, misrepresentations, or omissions by RLL, its employees, subcontractors or agents, RLL or RLL's members as proven in a court of law; or,

- is made by a third party arising out of or in connection with any personal injury, wrongful death, or property damage claim from a race related accident involving the RLL race cars, personnel or equipment.

b)    Seeman (the "**Notifying Party**") shall promptly notify RLL (the "**Indemnifying Party**") of the existence of any third party claim, demand or other action giving rise to a claim for indemnification under this Section 13 (a "**Third Party Claim**") and shall give the Indemnifying Party a reasonable opportunity to defend the same at its own expense and with its own counsel, provided that the Notifying Party shall at all times have the right to participate in such defense at its own expense. If, within a reasonable time after receipt of notice of a Third Party Claim, the Indemnifying Party shall fail to undertake to so defend, the Notifying Party shall have the right, but not the obligation, to defend and to compromise or settle (exercising reasonable business judgment) the Third Party Claim for the account and at the risk and expense of the Indemnifying Party. Each party shall make available to the other, at the other's expense, such information and assistance as the other shall reasonably request in connection with the defense of a Third Party Claim.

**11)    Insurance:**

RLL shall provide and maintain commercial Comprehensive General Liability insurance and appropriate racing insurance naming Seeman as additional insured on all such insurance policies. Said policy or policies shall have a minimum coverage of One Million U.S. Dollars ($1,000,000 USD) combined single limit for bodily injury and property damage, and a minimum coverage of One Million U.S. Dollars ($1,000,000 USD) which shall include contractual and advertising liabilities.

Such insurance shall:

- Cover completed operations/products liability;

- Cover broad from/blanket contractual liability (both oral and written contracts);

- Cover personal injury liability;

- Cover vehicle and in-transit;

- Cover Workers' Compensation; and,

- Cover RLL's and promoter/administrator's employees as additional insured.

12) **Public Statements; Confidential Information:**

The Parties and their respective, officers, directors and employees shall maintain the terms of the proposed Sponsorship Agreement, and any other Confidential Information shared by the Parties to each other in confidence.  Except as compelled to be disclosed by judicial or administrative process or by other requirements of law, legal process, rule or regulation, all communications regarding this MSA by either party to third parties, including but not limited to any disclosure regarding the transactions contemplated hereby, shall require the prior approval of the non-disclosing Party.  Both Parties shall ensure and guarantee strict compliance with the above obligations by its employees, co-workers and/or consultants.

13) **Notices:**

All notices given pursuant to this Agreement will be sent by facsimile transmission or prepaid registered mail, overnight delivery service or hand delivery with signed receipt to the addresses set out below or to such other addresses as notified from time to time in accordance with this Section.

For Seeman:            **Seeman Holtz, LLC**
                       301 Yamato Road, Suite 2222
                       Boca Raton, Florida 33431
                       Attention:  Marshal Seeman

For RLL:               **Rahal Letterman Lanigan Racing, LLC**
                       485 Southpoint Circle Suite 900

Brownsburg, Indiana 46112
Attention: Bobby Rahal

**14)   Miscellaneous:**

a)   *Counterparts*.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

b)   *Integration*.  This Agreement constitutes the entire agreement between the Parties, and supersedes all prior agreements and understandings, both written and oral, among the parties, with respect to the subject matter of this Agreement.

c)   *Amendment*.  This Agreement may be amended, modified or supplemented only in a writing signed by an authorized representative of both parties.

d)   *Relationship of the Parties*.  Seeman and RLL are independent parties and nothing contained in this MSA shall be deemed to create a partnership, joint venture, agency or employer-employee relationship between the Parties or to grant to either Party any right to assume or create any obligation on behalf of or in the name of the other.

e)   *Assignment*.  RLL may not assign any of its rights or delegate any of its obligations under the Agreement without the prior written consent of Seeman.  Any change in control of RLL resulting from a merger, consolidation, stock transfer or asset sale shall be deemed an assignment or transfer for purposes of this provision.

f)   *Applicable Law*.  The terms of this Agreement shall be governed by and construed in accordance with the laws of the state of Indiana, excluding the principles of conflict of laws.

g)   *Invalidity*.  If all or any part of any provision of this Agreement is held to be invalid or unenforceable the remainder (if any) of the provision and all other provisions will remain valid and enforceable to the fullest extent permissible by law.

h)   *Waiver*.  Failure of either Party at any time to require performance by the other Party of any provision of this Agreement will not affect the right of such aggrieved Party to require further performance of that provision.  Any waiver by either Party of a breach of any provision of this Agreement must be in writing to be effective and will not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself or a waiver of any right under this Agreement.

i)   *Attorneys' Fees*.  If any action is necessary to enforce the provisions of this MSA, including any claims or demands, or to interpret this MSA, the prevailing party shall be entitled to reasonable attorneys' fees and costs in addition to any other relief to which it may otherwise be entitled.

j)   *Headings*.  The section headings of this Agreement are inserted for convenience only and will not be deemed to constitute a part of this Agreement

8

**k)**     *Survival.*  The rights and obligations under this Agreement that by their nature should survive, including but not limited to the right of first refusal and the indemnification obligations, will remain in effect after the Term

**NOW WHEREFORE,** by affixing its signature below, each Party certifies and warrants that it understands the legal significance of the terms of this Agreement and that it has the legal authority to bind the organization it represents to the terms of this Agreement

**SEEMAN HOLTZ, LLC**[5]

By: _____

Name: _____ Marshal Seeman _____

Title: _____ President _____

Date: _____ 5/24/18 _____

**RAHAL LETTERMAN LANIGAN RACING, LLC**

By: _____

Name: _____ Robert W. Rahal _____

Title: _____ President/CEO _____

Date: _____ 5-25-18 _____

---

5 Is this the correct SH entity?

<u>EXHIBIT A</u>





# 2019 REVIEW OF DELIVERABLES

**TERM**
2019 Season w/ Option for 2020

**DESIGNSATION**
Proud Partner of Rahal Letterman Lanigan Racing

**BRAND ID**
Full season Associate Sponsor of No. 15 (Rahal) RLL entry, plus Associate branding on driver and crew uniforms as shown in Exhibit A/B.

Primary sponsor of the No. 30 (Sato) RLL entry at the 2019 St. Petersburg Grand Prix

**RLL DELIVERABLES**

- Four (4) appearances (3 In-Market and 1 Out-of-Market). Travel costs associated with out-of-market appearance is SH responsibility.

- One (1) Production Day day not to exceed four (4) hours in duration

- Six (6) at-track meet & greets for SH guests

- Sixty (60) credentials for SH use throughout race season (not to exceed 8 per any single event).

- Access to RLL trackside team hospitality when available

- Inclusion on RLL social media platform

- Access to RLL ShowCar

**Seeman ★ Holtz**
*Property & Casualty*



**Associate Sponsor** position of Seeman Holtz brand logo on FRONT NOSE of the Graham Rahal No.15 entry

*(FULL SEASON)*

**Seeman ★ Holtz** Property & Casualty

*BRANDING ID*



**Primary Sponsor** position of Seeman Holtz brand logo on SIDE PODS of the Takuma Sato No.30 entry at the St.Petersburg Grand Prix

EXHIBIT "B"

**Draft**
**11/26/2018**

## SEEMAN HOLTZ, LLC

## MOTORSPORTS SPONSORSHIP AGREEMENT

This Motorsports Sponsorship Agreement (this "MSA" or "Agreement") is dated as of _____, 2018 (the "Effective Date") and sets forth a binding agreement by and between Rahal Letterman Lanigan Racing, LLC ("RLL"), an Indiana limited liability company having its principal place of business at 485 Southpoint Circle, Suite 900, Brownsburg, Indiana 46112, and Seeman Holtz, LLC ("Seeman"), having its principal place of business at 301 Yamato Road, Suite 2222, Boca Raton, Florida 33431 (individually each a "Party" and collectively the "Parties"), regarding sponsorship for the 2019 and 2020 IndyCar Series Races.

**WHEREAS**, RLL is a leading team in IndyCar Series; and

**WHEREAS**, RLL has developed expertise in the areas of automobile racing technology and in the commercial marketing of automobile racing sponsorship associations; and

**WHEREAS**, Seeman is desirous of a sponsorship association with RLL's entries for the 2019 IndyCar Series Races, including primary sponsorship on the No. 30 car for the St. Petersburg Grand Prix and all season as a sponsor on the No. 15 Graham Rahal entry, with an option to extend the Agreement.

**NOW THEREFORE**, in consideration of the mutual promises, agreements and undertakings set forth in this Agreement, the sufficiency of which each Party acknowledges, the Parties agree as follows:

1.    <u>Term of the Agreement</u>.  The term of this Motorsports Sponsorship Agreement shall commence on the execution thereof and if continued by the Parties continue through the completion of the 2019 IndyCar Series Races unless extended by the Parties.

The Parties hereby grant each other a mutual right to extend this Agreement on the same terms and conditions for the 2020 IndyCar Race Season and the 2020 St. Petersburg Grand Prix by written agreement, signed by both Parties on or before _____, 2019.

2.    <u>Sponsorship Designation</u>.  Seeman is designated as a "Partner" of RLL for the IndyCar Series.

Seeman shall be the primary sponsor for the No. 30 RLL entry at the 2019 St. Petersburg Grand Prix.

3.    <u>Brand/Logo Identification</u>.  RLL will provide logo ID placement on the No. 15 IndyCar substantially in the form shown on Exhibit A of the Agreement for the IndyCar Racing Series, and in the form shown on Exhibit A, as the primary sponsor for the St. Petersburg Grand Prix.  In addition, RLL shall arrange for Seeman's logo to be an in-camera placement logo on the in-car camera on the No. 15 car for the Indy 500.  In addition, Seeman's logo shall be placed on the No. 15 Driver's racing suit in the position set forth on Exhibit B.  Seeman shall be provided with logo ID placement on RLL transporter, team equipment and crew uniforms as set forth on

Exhibit C.  No additional IndyCar logo placement shall be provided by RLL to Seeman during the Agreement.

4.  <u>Advertising and Promotional Rights</u>.

a.  During the Term of the MSA, RLL agrees to provide Seeman with a limited global license to use, display, and identify the names and/or likenesses of the RLL team, driver, crew, logo, photos of Car, crew uniforms, and other designs (the "RLL Marks") and refer to the Sponsorship in connection with its advertising, marketing, and promotional campaigns of Seeman, subject to the approval of RLL which will not be unreasonably withheld or delayed.

b.  During the Term Seeman agrees to provide the same limited rights as listed above, for use of Seeman's logos and logo usage, with its advertising, marketing and promotional companies.

c.  Seeman shall have the right during the Term, to engage in any reasonable advertising and promotional activities with respect to its sponsorship of the IndyCar Races, subject to the approval of RLL, which will not be unreasonably withheld or delayed.

d.  Seeman shall have the right to prepare and disseminate press release materials relating to its sponsorship of Seeman, and RLL will agree to include information provided by Seeman in RLL public relations material. Both Parties prior to release must approve all press releases related to the sponsorship in writing and such approval will not be unreasonably withheld or delayed.

5.  <u>RLL General Responsibilities</u>.

a.  RLL at its cost will (i) enter and maintain a competitive IndyCar entry driven by the No. 15 Driver; (ii) provide all necessary support vehicles; and (iii) expend its reasonable best efforts to qualify for the IndyCar Series Races.

b.  RLL will work with Seeman to develop mutually approved press releases to announce the partnership between Seeman and RLL.  All press releases must be approved by both parties prior to release.

c.  RLL shall provide the No. 15 Driver with two (2) in-market and one (1) out-of-market appearances during the IndyCar Racing Season.  All travel costs associated with out-of-market appearances shall be the responsibility of Seeman.  In addition, RLL shall make Driver available for one (1) production day not to exceed four (4) hours in duration.  RLL shall also make Driver available for six (6) at-track meet and greet opportunities for Seeman's guests.

d.  RLL shall provide Seeman with sixty (60) race credentials throughout the Race Season, with an amount not to exceed eight (8) credentials for any specific event.

e.  RLL shall provide access to RLL's trackside hospitality for Seeman's guests, when such hospitality is available, and at an agreed-upon cost to Seeman.

f.  RLL shall provide Seeman with access and inclusion to RLL's social media platform(s).

2

g.      RLL shall provide, at Seeman's cost, access to the use of one (1) of RLL's show cars during the IndyCar Season.

h.      RLL shall provide dedicated account manager to deal with all issues relating to sponsorship of Seeman.

6.      <u>Sponsorship Fees, Products & Services</u>.  As consideration for the sponsorship, advertising and promotional rights defined and granted to Seeman, Seeman shall pay RLL a sponsorship fee of $500,000 payable as follows:

a.      $250,000 on or before December 31, 2018, and

b.      $250,000 on or before June 1, 2019.

7.      <u>Use of Seeman's Trade Names and Trademarks by RLL</u>.

a.      <u>Grant of Rights</u>.  During the Term, Seeman hereby grants RLL a limited, non-exclusive license to use its trade names and trademarks ("Sponsor Marks") used for the purpose of executing the racing program and for advertising and promoting the Sponsorship pursuant to the terms and conditions of this Agreement.  In addition, for use of Seeman logos and logo usage in connection with any RLL Team Merchandise made for sale to the fans on-site at IndyCar race events and/or on our exclusive RLL e-commerce website.  All advertising and promotional material produced, published, broadcast, displayed or exhibited by RLL related to Seeman shall be approved in writing by Seeman and acknowledge Seeman in a manner agreed to by both Parties.  Unless explicitly provided for herein, RLL's use of Seeman trade names and trademarks is subject to the written approval of Seeman, which approval will not be unreasonably delayed.  Upon the expiration/termination of this Agreement or upon request of Seeman, for any reason whatsoever, all of RLL's rights to use the Sponsor Marks shall immediately terminate and RLL shall discontinue immediately all uses of the Sponsor Marks.  RLL shall be permitted, however, to sell all merchandise denoting Sponsor Marks which already was produced and in stock at the expiration of this Agreement.  All rights granted above shall be subject to Seeman's prior approval of the usage by RLL of Seeman's Sponsor Marks and logos.

b.      <u>Goodwill</u>.  RLL recognizes the great value of the goodwill associated with Seeman intellectual property.  RLL recognizes that Seeman has an interest in maintaining and protecting the image and reputation of its intellectual property and that Seeman intellectual property must be used in a manner consistent with the standards established by Seeman.

c.      <u>Termination of Use</u>.  RLL shall immediately, on the termination or expiration of this Agreement or upon request of Seeman, for any reason whatsoever, cease to use or otherwise refer to Seeman trade names and trademarks or logos except to the extent otherwise authorized by law or mutual written agreement.

8.      <u>Representations and Warranties</u>.

a.      RLL hereby represents and warrants to Seeman as follows:

3

- it is authorized to enter into this MSA and this MSA does not conflict or interfere with any other agreements with third parties covering a similar subject matter;

- it has the full right and authority to grant Seeman rights and benefits as set forth herein;

- all services, activities and obligations to be furnished and performed by RLL hereunder shall be performed in a lawful, professional and workmanlike manner;

- it shall apply and secure any and all permits and/or licenses which may be necessary for the performance of its obligations hereunder;

- it owns or otherwise has the rights to the RLL Marks and has the right to allow Seeman to use the RLL Marks as provided for herein;

- it shall be solely responsible for any and all payments to suppliers and manufacturers normally associated with the physical preparation of the Car. In addition should RLL incur any rights fees from use of associated RLL branding then RLL shall be liable for payment of such rights fees.

b.     Seeman hereby represents and warrants to RLL as follows:

- it is authorized to enter into this MSA and this MSA does not conflict or interfere with any other agreement with third parties covering similar subject matter;

- all services, activities and obligations to be performed by Seeman hereunder shall be performed in a lawful, professional and workmanlike manner;

- Seeman owns or otherwise has the rights to the Sponsor Marks; and the use of the Sponsor Marks as approved by Seeman will not infringe the copyrights, trademarks, service marks, and trade secrets of any third party.

- Seeman has the financial capability to fulfill all of its commitments as outlined herein.

9.     No License. Except as expressly provided herein, no property, license, permission or interest of any kind in or to the use of any trademark, trade name, color combination, insignia or device owned or used by either RLL or Seeman is or is intended to be given, assigned to, or transferred to or acquired by the other party by the execution, performance or nonperformance or this MSA or any part thereof. Each party agrees that it shall in no way contest or deny the validity of, or the right or title of the other party in or to such trademark, trade

4

name, color combination, insignia or device, by reason of this MSA and shall not encourage or assist others directly or indirectly to do so, during the Term of this Agreement and thereafter. In addition, neither party shall utilize any such trademark, trade name, color combination, insignia or device in any manner that would diminish its value or harm the reputation of the other party.

10.   Termination.  Either party may terminate this MSA immediately if a Default, as defined below, by the other party has occurred and is continuing by giving written notice thereof to the defaulting party.  The term "Default" shall mean the occurrence of any of the following events: (a) a failure by a party to comply with or perform any material provision or condition of this MSA and failure to cure said noncompliance or nonperformance for two (2) days after service of written notice thereof to such party; (b) a party becomes insolvent, is unable to pay debts as they mature or is the subject of a petition in bankruptcy, whether voluntary or involuntary, or of any other proceeding under bankruptcy insolvency or similar laws; makes an assignment for the benefit of creditors; is named in or its property subject to a suit for appointment of a receiver; or is dissolved or liquidated; or (c) any warranty made in this MSA is breached or is false or misleading in any material respect.

11.   Limitation of Liability.  No Party shall be liable to any other Party or to any third party for any incidental, special, consequential, or punitive damages, including without limitation lost profits suffered (i) because of any failure to perform any obligation under this Agreement, or (ii) because of any act, error or omission, unless such damage was caused by the gross misconduct, intentional misconduct or unlawful conduct of a Party or any of its employees or agents.

12.   Indemnity.

a.   RLL shall indemnify and hold Seeman, together with their parent companies, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, successors and assigns, harmless from and against any and all judgments, losses, damages, liabilities, claims, demands, suits, costs, actions or proceedings, expenses (including reasonable attorneys' fees, expert witness fees, and allocable costs of in-house counsel) which may be asserted against or incurred by any of them, arising out of, related to or in connection with:

- breaches any representation or warranty made by RLL herein;

- infringe upon any third party trademarks, service marks, logos, copyrights, trade secrets, moral rights, privacy rights, or publicity rights in connection with Seeman use and/or distribution of the RLL Marks pursuant to this MSA;

- arises because of any other acts, errors, failures to act, representations, misrepresentations, or omissions by RLL, its employees, subcontractors or agents, RLL or RLL's members as proven in a court of law; or,

- is made by a third party arising out of or in connection with any personal injury, wrongful death, or property damage claim from a race related accident involving the RLL race cars or equipment."

b.      Seeman (the "Notifying Party") shall promptly notify RLL (the "Indemnifying Party") of the existence of any third party claim, demand or other action giving rise to a claim for indemnification under this Section 13 (a "Third Party Claim") and shall give the Indemnifying Party a reasonable opportunity to defend the same at its own expense and with its own counsel, provided that the Notifying Party shall at all times have the right to participate in such defense at its own expense. If, within a reasonable time after receipt of notice of a Third Party Claim, the Indemnifying Party shall fail to undertake to so defend, the Notifying Party shall have the right, but not the obligation, to defend and to compromise or settle (exercising reasonable business judgment) the Third Party Claim for the account and at the risk and expense of the Indemnifying Party. Each party shall make available to the other, at the other's expense, such information and assistance as the other shall reasonably request in connection with the defense of a Third Party Claim.

13.     <u>Insurance</u>. RLL shall provide and maintain commercial Comprehensive General Liability insurance and appropriate racing insurance naming Seeman as additional insured on all such insurance policies.  Said policy or policies shall have a minimum coverage of One Million U.S. Dollars ($1,000,000 USD) combined single limit for bodily injury and property damage, and a minimum coverage of One Million U.S. Dollars ($1,000,000 USD) which shall include contractual and advertising liabilities.

Such insurance shall:

- Cover completed operations/products liability;

- Cover broad from/blanket contractual liability (both oral and written contracts);

- Cover personal injury liability;

- Cover vehicle and in-transit;

- Cover Workers' Compensation; and,

- Cover RLL's and promoter/administrator's employees as additional insured.

14.     <u>Public Statements; Confidential Information</u>.  The Parties and their respective, officers, directors and employees shall maintain the existence and terms of the proposed Sponsorship Agreement, and any other Confidential Information shared by the Parties to each other in confidence.  Except as compelled to be disclosed by judicial or administrative process or by other requirements of law, legal process, rule or regulation, all communications regarding this MSA to third parties, including but not limited to any disclosure regarding the transactions contemplated hereby, shall require the prior approval of the non-disclosing Party.  Both Parties shall ensure and guarantee strict compliance with the above obligations by its employees, co-workers and/or consultants.

15.     <u>Notices</u>.  All notices given pursuant to this Agreement will be sent by facsimile transmission or prepaid registered mail, overnight delivery service or hand delivery with signed

receipt to the addresses set out below or to such other addresses as notified from time to time in accordance with this Section.

| | |
|---|---|
| For Seeman: | Seeman Holtz, LLC<br>301 Yamato Road, Suite 2222<br>Boca Raton, Florida 33431<br>Attention: Marshal Seeman |
| For RLL: | Rahal Letterman Lanigan Racing, LLC<br>485 Southpoint Circle Suite 900<br>Brownsburg, Indiana 46112<br>Attention: Bobby Rahal |

16. <u>Miscellaneous</u>.

a. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

b. <u>Integration</u>. This Agreement constitutes the entire agreement between the Parties, and supersedes all prior agreements and understandings, both written and oral, among the parties, with respect to the subject matter of this Agreement.

c. <u>Amendment</u>. This Agreement may be amended, modified or supplemented only in a writing signed by an authorized representative of both parties.

d. <u>Relationship of the Parties</u>. Seeman and RLL are independent parties and nothing contained in this MSA shall be deemed to create a partnership, joint venture, agency or employer-employee relationship between the Parties or to grant to either Party any right to assume or create any obligation on behalf of or in the name of the other.

e. <u>Assignment</u>. RLL may not assign any of its rights or delegate any of its obligations under the Agreement without the prior written consent of Seeman. Any change in control of RLL resulting from a merger, consolidation, stock transfer or asset sale shall be deemed an assignment or transfer for purposes of this provision.

f. <u>Applicable Law</u>. The terms of this Agreement shall be governed by and construed in accordance with the laws of the state of Indiana, excluding the principles of conflict of laws.

g. <u>Invalidity</u>. If all or any part of any provision of this Agreement is held to be invalid or unenforceable the remainder (if any) of the provision and all other provisions will remain valid and enforceable to the fullest extent permissible by law.

h. <u>Waiver</u>. Failure of either Party at any time to require performance by the other Party of any provision of this Agreement will not affect the right of such aggrieved Party to require further performance of that provision. Any waiver by either Party of a breach of any

provision of this Agreement must be in writing to be effective and will not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself or a waiver of any right under this Agreement.

i.      Attorneys' Fees.  If any action is necessary to enforce the provisions of this MSA, including any claims or demands, or to interpret this MSA, the prevailing party shall be entitled to reasonable attorneys' fees and costs in addition to any other relief to which it may otherwise be entitled.

j.      Headings.  The section headings of this Agreement are inserted for convenience only and will not be deemed to constitute a part of this Agreement

k.      Survival.  The rights and obligations under this Agreement that by their nature should survive, including but not limited to the right of first refusal and the indemnification obligations, will remain in effect after the Term.

**NOW WHEREFORE**, by affixing its signature below, each Party certifies and warrants that it understands the legal significance of the terms of this Agreement and that it has the legal authority to bind the organization it represents to the terms of this Agreement

**SEEMAN HOLTZ, LLC**

By: _____

Name: _____ Marshal Seeman _____

Title: _____ President _____

Date: _____

**RAHAL LETTERMAN LANIGAN RACING, LLC**

By: _____

Name: _____ Robert W. Rahal _____

Title: _____ CEO _____

Date: _____

<u>EXHIBIT A</u>

.

EXHIBIT B

<u>EXHIBIT C</u>

# EXHIBIT "C"



**Seeman ★ Holtz**
*Property & Casualty*

**BRANDING ID**

**Associate Sponsor** position
of Seeman Holtz brand logo
on LEFT SLEEVE of the
Graham Rahal Race Suits

*(FULL SEASON)*







**Seeman ★ Holtz**
Property & Casualty

**BRANDING ID**

**Associate Sponsor** position
of Seeman Holtz brand logo on
RIGHT SLEEVE of the RLL
Crew Shirts

*(FULL SEASON)*

Right Sleeve




# SINGLE EVENT RACE CREDENTIALS (SEC's)

**Single-Event Credentials (SEC's)** are submitted and produced on an event-by-event basis and are only valid for the race designated when submitted.. **SEC's require name, birthdate and email address to submit at least two weeks prior to each event.**

- **SEC's** are valid during any day of on-track activity for the weekend
- **SEC's** grant general admission into the race track
- **SEC's** provide garage and pit lane access until 30 minutes prior to the start of the race

**SeemanHoltz** will receive Sixty (60) credentials for SH use throughout race season (not to exceed 8 per any single event) as part of the 2019 Partnership Agreement

SEC's **DO NOT** provide access to the following:

- Hot Pit access during an NTT IndyCar Series race (a "race mode" sticker is required for Hot Pit)
- Parking and Grandstand seating
- Race track Hospitality Suites or other locations
- RLL team hospitality
- Must be 18 years of age and are non-transferrable



**Seeman ★ Holtz**
Property & Casualty

# RLL TEAM HOSPITALITY EXPERIENCE



## 2019 RLL TEAM HOSPITALITY SCHEDULE

- St. Petersburg, FL – March 8-10
- Indianapolis, IN – May 10-11 (Indy GP)
- Indianapolis, IN – May 24-26 (Indy 500)
- Detroit, MI – June 1-2
- Toronto, ON – July 12-14
- Mid-Ohio – July 26-28
- Monterey, CA – September 20-22

When the RLL Team Hospitality set-up is not at an event, there are often other alternatives to secure hospitality experiences such as Trackside Suites, Chalets and/or other Hospitality Club level options. These options vary in price by track and can be booked with assistance from RLL.

**Seeman ★ Holtz**
Property & Casualty





## THANK YOU

I want to sincerely thank you for the time and consideration of a partnership with Rahal Letterman Lanigan Racing. You won't find another organization that will work as hard to collaborate with you in all areas.

We look forward to demonstrating how teaming with RLL will help you achieve success.

Bobby Rahal - RLL Principal Owner
1986 Indy500 Winner



# EXHIBIT "D"

Seeman Holtz both through the team and our partners.   As discussed, RLL will work through Terry on all insurance related needs in order to be directed to the correct contact within the Seeman Holtz family.  As you know, the partner summit in Austin next week will be a great platform for Seeman Holtz to meet with other team partners and discuss your complete insurance portfolio offering.  We understand that people want to have a personal relationship with their insurance and financial advisors. Having a member of your team actively involved at key events throughout the 2019 race calendar will be very helpful in targeting business opportunities as well as establishing the Seeman Holtz name in the paddock.  We look forward to hosting you next week and to the season launch in St. Petersburg on March 8th, 9th, 10th. St. Pete will be a great opportunity for you to spend time with the ownership group, experience our hospitality, meet business contacts, and enjoy some great racing.

Here is a digital link to the copies I left yesterday of the 2019 deliverables and team assets for Seeman Holtz:

https://www.dropbox.com/s/y9dyrgqtndhbqzw/
SeemanHoltz_PartnershipReview_2019.pdf?dl=0


In closing, we value our partnership with you and appreciate your support.  We look forward to working together in 2019 and building toward the future together.  Thank you.

Contact information:

**Seeman Holtz contact**

Terry R. Sgammato, LUTCF
Director of Property & Casualty
Seeman Holtz
301 Yamato Road
Suite 2250
Boca Raton, FL 33431
(561) 451-1900 x 3447 (Office)
(561) 208-0184 (Direct)
terry@seemanholtzpc.com

**RLL Partnership Marketing contact**

Kevin Warner
Vice President of Partnership Marketing

Rahal Letterman Lanigan Racing
485 Southpoint Circle
Ste.#900
Brownsburg, IN 46112
(317) 374-0630
kwarner@rahal.com

**Tom Knox**
*Senior Vice President of Sales and Marketing*

C: 704.236.0453

www.rahal.com

*NOTICE: This message and any documents, files or previous e-mail messages attached to it is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution, copying or acting upon the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. For more information, please visit www.rahal.com*

EXHIBIT "E"

**From:** Marshal Seeman <marshal@seemanholtz.com>
**Sent:** Friday, February 8, 2019 5:53 PM
**To:** Tom Knox <tknox@rahal.com>; Terry Sgammato <TSgammato@seemanholtzpc.com>
**Cc:** Bobby Rahal <brahal@rahal.com>; Kevin Warner <kwarner@rahal.com>; Brian Marks
<bmarks@rahal.com>; Piers Phillips <pphillips@rahal.com>
**Subject:** RE: Thank you

Tom – thank you sorry yesterday wound up being crazy. I just want you to know we want this relationship to work with the entire RLL old team. We really look forward to making this productive for us all. I think that with Terry now involved we can all make this work.

Best Regards

**Seeman ✦ Holtz**

561-241-3121 | OFFICE

800-325-8907 | TOLL FREE

WEB | www.seemanholtz.com

SOCIAL | FACEBOOK | LINKEDIN

This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. Company Name is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the company.

EXHIBIT "F"

**From:** Terry Sgammato <TSgammato@seemanholtzpc.com>
**Sent:** Friday, February 8, 2019 5:00 PM
**To:** Tom Knox <tknox@rahal.com>; Marshal Seeman <marshal@seemanholtz.com>
**Cc:** Bobby Rahal <brahal@rahal.com>; Kevin Warner <kwarner@rahal.com>; Brian Marks <bmarks@rahal.com>; Piers Phillips <pphillips@rahal.com>; Patrick Jeffers <PJeffers@seemanholtz.com>
**Subject:** RE: Thank you

Hello Tom,

Thank you for the follow up and the introduction to your team. We are all very eager to develop a closer relationship with you all and begin working, and playing together this season. I shall be attending the event in Austin along with Patrick Jeffords, President of our advisory group, and possibly one additional agent pending his RSVP. As you know Marshal is unable to attend as traveling north. We look forward to the introductions and a great event.

I've aligned some of the resources for the matters you presented and will reach out to Piers Monday to discuss further. Have a great weekend and see you in Austin.
Terry

Terry R. Sgammato, LUTCF
*Director of Property and Casualty*



Property & Casualty

301 Yamato Rd. Suite 2250
Boca Raton, FL 33431
561-451-1900 | OFFICE
561-208-0184 | DIRECT
**800-325-8907** | TOLL FREE

We value the client experience. Please share yours on our social media pages.
Simply click your preferred link below and go directly to our page.
WEB | **www.SeemanHoltzPC.com**
SOCIAL | **Facebook** | **Google+** | **LinkedIn** | **Yelp**
**Please remember that coverages cannot be bound or amended via the email system.**
**If you are in need of a certificate or evidence of insurance, please email written request to coi@seemanholtzpc.com.**

EXHIBIT "G"









EXHIBIT "H"

**From:** Kevin Warner <kwarner@rahal.com>
**Sent:** Sunday, February 24, 2019 8:54 PM
**To:** Tom Knox <tknox@rahal.com>
**Subject:** FW: New IndyCar Series Entry Change Form SUBMITTED

Good with this name for 30 car just for St. Pete?

# IndyCar Series Entry Change Form Submitted

| | |
|---|---|
| **Entrant:** | Team Rahal Inc. |
| **Car #:** | 30 |
| **d/b/a:** | Rahal Letterman Lanigan Racing |
| **Event(s):** | St. Pete |
| **Type of Change:** | Change of Official Car Name |
| **New Driver Name:** | |
| **New Car Number:** | |
| **Primary Chassis Manufacturer:** | |
| **Primary Chassis Number:** | |
| **Backup Chassis Manufacturer:** | |
| **Backup Chassis Number:** | |
| **Reason for Chassis Change:** | |
| **New Official Car Name:** | Panasonic / Seeman Holtz |
| **New Team/General/Shop Manager Name:** | |
| **New Chief Mechanic Name:** | |
| **Other:** | |

EXHIBIT "I"

**From:** Eric Holtz [mailto:eric@seemanholtz.com]
**Sent:** Monday, March 11, 2019 2:13 PM
**To:** Terry Sgammato; Kevin Warner
**Cc:** Tom Knox
**Subject:** RE: St Pete

Thanks again guys. We really felt well taken care of.

I realized that I will be in So Cal with my wife and thirteen year old son during the Long Beach race. Please let me know if there will be an opportunity to attend this event with my family. We could continue our relationship building there.

Thanks,

Eric

EXHIBIT "J"

**From:** Terry Sgammato <TSgammato@seemanholtzpc.com>
**Sent:** Monday, March 11, 2019 9:41 AM
**To:** Kevin Warner <kwarner@rahal.com>; Eric Holtz <eric@seemanholtz.com>
**Cc:** Tom Knox <tknox@rahal.com>
**Subject:** RE: St Pete

Good morning Kevin and Tom,
Thanks for reaching out, and the hospitality in St Pete. Bummer on Satos ride, he seemed to be in good position to compete. The RLL team has been great to work with and we appreciate your approach in business development and making the most of the race experience. We made some great introductions and regretfully missed Kevin and John from the dealer network, but may see him in Sebring I understand. Not sure if either of you will attend but I'll be there with my son and associates.

Safe travels and we'll look forward to the next exchange.
Terry

Terry R. Sgammato, LUTCF
Director of Property and Casualty

301 Yamato Rd. Suite 2250
Boca Raton, FL 33431
561-451-1900 | OFFICE
561-208-0184 | DIRECT
800-325-8907 | TOLL FREE

We value the client experience. Please share yours on our social media pages.
Simply click your preferred link below and go directly to our page.
WEB | www.SeemanHoltzPC.com
SOCIAL | Facebook | Google+ | LinkedIn | Yelp
Please remember that coverages cannot be bound or amended via the email system.
If you are in need of a certificate or evidence of insurance, please email written request to
coi@seemanholtzpc.com.

This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. Company Name is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily

EXHIBIT "K"

**From:** Terry Sgammato <TSgammato@seemanholtzpc.com>
**Sent:** Tuesday, May 28, 2019 3:22 PM
**To:** Tom Knox <tknox@rahal.com>; Tom German <tgerman@rahal.com>
**Cc:** Kevin Warner <kwarner@rahal.com>

**Subject:** RE: Indy follow-up

Good afternoon Tom,
Thank you for reaching out! The introduction to Tom was the only item we didn't check for the weekend and we both figured it was a stretch to try to pull it off. We both enjoyed the experience immensely and were pleased that Sato hit the podium despite how bummed we were for Graham and Bobby. 17 is a special number for us and we held hope it would rub off for a win. I would love to set up a call for an introduction with Tom and a brief Q & A. As I noted Nick is a huge fan of high performance cars and an aspiring engineer and was thrilled at the opportunity since looking at Toms background and experiences. He's had a tough go this past year and any added insight or inspiration goes along way. Let me know how and when Tom may spare a few minutes for a brief chat.

I can't begin to tell you how much I appreciate you and Kevin's personal touch. I've been around a lot of sports and marketing events and have never experienced such genuine, and timely interactions as your entire group delivers. I sense this is part of the Rahal persona and one that really connects with our own at Seeman Holtz. Your all real PRO's and I wanted to express all the above! I am meeting with Marshal and Eric to discuss the entire program and encourage them to engage further, and invest what is needed for us to build the value they both see exists. Our company is growing at a blinding pace and they sometimes struggle with taking in the moments and engaging personally. I trust they agree and engage accordingly.

Once again, thank you and I'll look forward to your reply.
Take care and good luck in Detroit!
Terry

**Terry R. Sgammato, LUTCF**
*Director of Property and Casualty*

<image005.jpg>

301 Yamato Road, Suite 2222
Boca Raton, FL 33431
**561-451-1900** | OFFICE
**561-208-0184** | DIRECT LINE
**844-255-6639** | TOLL FREE

We value the client experience. Please share yours on our social media pages.
Simply click your preferred link below and go directly to our page.

EXHIBIT "L"

On Apr 16, 2019, at 3:34 PM, Dan Tepper <DTepper@seemanholtz.com> wrote:

Hey Kevin & Tom,

What a fun day! Thank you so much for the tickets and access. Thanks again for a great day!!

**Dan Tepper**
*Regional Manager / Executive Senior Advisor*
<image001.png>
20280 Acacia Street, Suite 320
Newport Beach, CA 92660
949-478-6841 | DIRECT
954-629-4778 | MOBILE
800-325-8907 | TOLL FREE

We value the client experience. Please share yours on our social media pages.
Simply click your preferred link below and go directly to our page.
WEB | https://www.SeemanHoltzAdvisory.com/
SOCIAL | Facebook | Google+ | LinkedIn | Yelp

EXHIBIT "M"

From: Brian Hand <BHand@seemanholtz.com>
Sent: Monday, April 15, 2019 10:46 PM
To: Tom Knox <tknox@rahal.com>
Subject: Long Beach Grand Prix

Hello Tom,

I had a great time at the Long Beach Grand Prix this weekend. Thank you for the opportunity to go to the Grand Prix and for the Pit and Garage passes.

It was awesome being down there with drivers and being able to meet Graham Rahal. He's a really down to earth guy.

It's crazy how much technology and preparation it takes for each race. It was eye opening.

I'm definitely hooked on Indy Car now.

I hope you guys have a successful season. I'll see you guys soon!


Sincerely,

# EXHIBIT "N"

**From:** Veronica Lapointe <<u>vlapointe@rahal.com</u>>
**Sent:** Wednesday, April 10, 2019 10:06 AM
**To:** <u>Marshal@seemanholtz.com</u>
**Cc:** Chris Knece <<u>cknece@rahal.com</u>>
**Subject:** Invoice 001605

Attached please find invoice 001605 we are submitting for process.

Thank you.

Veronica Lapointe

**Tap to
Download**
image003.jpg
3 KB

Veronica Lapointe
Office Administrator
(614)529-7000 Ext. 115

4601 Lyman Drive

**INVOICE**

RAPALEE INGRAM LANGDAN

4601 LYMAN ROAD
HILLIARD OH 43026
Phone          Fax
(317) 858 3717      (317) 858 3716

| | |
|---|---|
| MARSHAL SEEMAN | Document Date. | 4/5/2019 |
| SEEMAN HOLTZ LLC | Invoice Number. | 001605 |
| 301 YAMATO ROAD SUITE 2222 | PO Nbr |
| BOCA RATON FL 33431 | | |
| | Customer ID | S033 |
| | Terms: | Net 30 Days |
| | Payment Due | 7/1/2019 |

1 of 1

| DESCRIPTION | PRICE |
|---|---|
| FIRST INSTALLMENT FOR THE 2019 AGREEMENT WITH RLLR | 250,000 00 |
| | |
| Thank you very Much! | TOTAL. | **250,000.00** |

Bank Wiring Instructions

Bank Name.      Fifth Third Bank
Account #       7655897671
ACH Routing#    074908594
WIRE Routing#   042000314

We are pleased to accept credit card payments with a 3% processing fee assessed

# EXHIBIT "O"

**From:** Barbara Koenig
**Sent:** Tuesday, July 23, 2019 4:21 PM
**To:** Terry Sgammato
<tsgammato@seemanholtzpc.com>
**Subject:** Invoice from Rahal Letterman Lanigan

Hi Terry

Attached is an invoice for 2019 sponsorship.
Please let us know if you have any questions or
need additional information.

Thank you,
Barb

Barbara A. Koenig, CPA

**Financial Controller and HR Manager**

485 Southpoint Circle, Suite 900

Brownsburg, IN  46112

Office:  317.858.3717, ext 246

Cell:  317.432.4932

# EXHIBIT "P"

**From:** Terry Sgammato <TSgammato@seemanholtzpc.com>
**Sent:** Tuesday, July 23, 2019 4:27 PM
**To:** Barbara Koenig <bkoenig@rahal.com>
**Subject:** RE: Invoice from Rahal Letterman Lanigan

Thank you Barbara.  I shall forward to Marshal
Seeman.
Regards,
Terry

**Terry R. Sgammato, LUTCF**
*Director of Property and Casualty*

301 Yamato Road, Suite 2222
Boca Raton, FL 33431
**561-451-1900** | OFFICE
**561-208-0184** | DIRECT LINE
**844-255-6639** | TOLL FREE

We value the client experience. Please share yours on our
social media pages.
Simply click your preferred link below and go directly to our
page.
WEB | **www.SeemanHoltzPC.com**
SOCIAL | **Facebook** | **Google+** | **LinkedIn** | **Yelp**
Please remember that coverages cannot be bound or amended
via the email system.
If you are in need of a certificate or evidence of insurance,
please email written request to **coi@seemanholtzpc.com**.

This e-mail message may contain confidential or legally privileged
information and is intended only for the use of the intended recipient(s).
Any unauthorized disclosure, dissemination, distribution, copying or the
taking of any action in reliance on the information herein is prohibited. E-
mails are not secure and cannot be guaranteed to be error free as they can
be intercepted, amended, or contain viruses. Anyone who communicates
with us by e-mail is deemed to have accepted these risks. Seeman Holtz

EXHIBIT "Q"

**From:** Barbara Koenig
**Sent:** Thursday, August 1, 2019 1:55 PM
**To:** 'Marshall Seeman' <mseeman@seemanholtzpc.com>
**Subject:** Invoices from Rahal

Hello Marshall

Attached are two invoices for 2019 sponsorship.  I believe that invoice 1605 was recently forwarded to you from Terry Sgammato that was due July 1st.  The second invoice 1757 is the second sponsorship invoice dated today, due October 1, 2019.

Please let us know if you need anything from us.

Thank you so much.

Barb



**Barbara A. Koenig, CPA**
**Financial Controller and HR Manager**

485 Southpoint Circle, Suite 900, Brownsburg, IN  46112
Office:  317-858-3717, ext 246     Cell:  317-432-4932

P Please, consider your environmental responsibility. Before printing this e-mail ask yourself: "Do I really need a hard copy?"

NOTICE: This message and any documents, files or previous e-mail messages attached to it is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution, copying or acting upon the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. For more information, please visit www.rahal.com

EXHIBIT "R"

**From:** Barbara Koenig
**Sent:** Thursday, August 15, 2019 12:14 PM

**To:** 'Marshall Seeman' <mseeman@seemanholtzpc.com>
**Subject:** Rahal invoices

Good afternoon Marshal

I wanted to follow up on the $250,000 invoice that was due 7/1/19.  If you have already processed this payment, thank you.  If not, can you give me an idea of when that will take place?

Thank you,
Barb



**Barbara A. Koenig, CPA**
**Financial Controller and HR Manager**

485 Southpoint Circle, Suite 900, Brownsburg, IN  46112
Office:  317-858-3717, ext 246      Cell:  317-432-4932

P  Please, consider your environmental responsibility. Before printing this e-mail ask yourself: "Do I really need a hard copy?"

NOTICE: This message and any documents, files or previous e-mail messages attached to it is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution, copying or acting upon the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. For more information, please visit www.rahal.com

# EXHIBIT "S"

**From:** Terry Sgammato
<TSgammato@seemanholtzpc.com>
**Sent:** Friday, September 20, 2019 12:12 PM
**To:** Tom Knox <tknox@rahal.com>
**Subject:** RE: Laguna - Friday and/or Saturday evening
5/3

Hello Tom,
Hope your travels have gone well. Thanks for sharing
this I shall contact Jeff today. I've still no response to
provide despite my efforts to move forward. I believe
Marshals mom is nearing the end and Eric shared that
he needs Marshals agreement to reply. He indicated
his desire to address billing and get everyone on the
same page to move forward. I will reach out to you
upon getting word. I am on the road in the Midwest
thru next weekend but am connected so please hang
in there with me.
Thanks

**Terry R. Sgammato, LUTCF**
*Director of Property and Casualty*

301 Yamato Road, Suite 2222
Boca Raton, FL 33431
561-451-1900 | OFFICE
561-208-0184 | DIRECT LINE
844-255-6639 | TOLL FREE

We value the client experience. Please share yours on our
social media pages.
Simply click your preferred link below and go directly to our
page.

# EXHIBIT "T"

On Thu, Sep 26, 2019 at 11:57 AM -0400, "Barbara Koenig"
<bkoenig@rahal.com> wrote:

Hi Terry

I know you have been speaking with Tom regarding the 2019
sponsorship invoices as Marshal is busy with his family. I wanted to
ask if both invoices, total of $500,000, could be paid now. The first
invoice of $250,000 was due 8/1/19, and the second invoice of
$250,000 is due 10/1/19. I am trying to wrap up the season end
accounting so wanted to get an idea of the timing for the payment.

Thank you,
Barb



**Barbara A. Koenig, CPA**
*Financial Controller and HR Manager*

485 Southpoint Circle, Suite 800, Brownsburg, IN  46112
Office:  317-858-3717, ext 246      Cell:  317-432-4932

# EXHIBIT "U"

**From:** Terry Sgammato <TSgammato@seemanholtzpc.com>
**Sent:** Thursday, September 26, 2019 12:18 PM
**To:** Barbara Koenig <bkoenig@rahal.com>
**Cc:** Tom Knox <tknox@rahal.com>
**Subject:** Re: Seeman Holtz

Hello Barbara
I just spoke with Eric regarding the billing and all things related. They will make arrangements to respond to invoice and shall contact Bobby this coming week to get all parties aligned.
Thank you,
Terry

Terry R. Sgammato, LUTCF
Director of Property & Casualty
Seeman Holtz Property & Casualty
301 Yamato Road
Suite 2222
Boca Raton FL 33431
Office 561-451-1900 Ext 3447
Direct 561-208-0184

# EXHIBIT "V"

**From:** Tom Knox <tknox@rahal.com>
**Sent:** Monday, November 11, 2019 4:59 PM
**To:** Eric Holtz <eric@seemanholtz.com>
**Cc:** Kevin Warner <kwarner@rahal.com>; Barbara Koenig <bkoenig@rahal.com>; Tom Knox <tknox@rahal.com>
**Subject:** Seeman Holtz/RLL

Good Afternoon Eric,

I trust you had a good weekend.   Thank you for your email.   I left a message at your office on Friday to discuss your thoughts in further detail.  My question to you is

that we have an agreement for 2018 and 2019.   How do you suggest we resolve 2019?  We can work together on a revised structure for 2020 moving forward but need to resolve 2019.   Can we schedule time this week to work through?  What works best for you?

Tom Knox

EXHIBIT "W"

**From:** Tom Knox <tknox@rahal.com>
**Sent:** Wednesday, November 13, 2019 2:47 PM
**To:** Eric Holtz <eric@seemanholtz.com>; marshal@seemanholtz.com
**Cc:** Kevin Warner <kwarner@rahal.com>; Bobby Rahal <brahal@rahal.com>; Terry
Sgammato <TSgammato@seemanholtzpc.com>
**Subject:** Need to talk
**Importance:** High

Good Afternoon Marshal and Eric,

Eric, I left a message at your front desk earlier today and last Friday.   We need to
schedule time to speak about our 2019 contract and a mutual agreement on a
resolution and understand if we can work together in 2020.  We want to have this
resolved this week.  Can you please let us know your availability to discuss.  Thank

Thank you,

Tom



**Tom Knox**
*Senior Vice President of Sales and Marketing*

C: 704.236.0453

www.rahal.com

*NOTICE: This message and any documents, files or previous e-mail messages attached to it is intended only for the use
of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt
from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent
responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution,
copying or acting upon the information contained herein, may be a violation of applicable law and is strictly prohibited. If
you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete
the original message immediately. For more information, please visit www.rahal.com*

# EXHIBIT "X"

**From:** David Anderson <danderson@vuw4ins.com>
**Sent:** Friday, November 22, 2019 12:52 PM
**To:** Tom Knox <tknox@rahal.com>
**Subject:** Thank you

Tom:

Thanks for taking the time to discuss our relationship today. It is evident that there is a strong desire on both sides to continue working together, and to make this profitable for both sides.

Just thought I would email quick so you have my contact information. Don't hesitate to reach me at either number, or by email. Communication is the key to making this all work.

**David Anderson //** Vice President
**Seeman ★ Holtz**
300 Dousman Street, Green Bay, WI 54303
(920) 432-7246 (o)
(920) 609 2875 (c)

**President, CEO**
Vincent, Urban, Walker & Associates
A Seeman Holtz Property & Casualty Company
300 Dousman Street, Green Bay, WI 54303
www.vuw4ins.com

# EXHIBIT "Y"

**From:** David Anderson <danderson@vuw4ins.com>
**Sent:** Wednesday, November 27, 2019 3:41 PM
**To:** 'Ron Ferris' <ron.ferris@bobbyrahal.com>
**Cc:** Tom Knox <tknox@rahal.com>
**Subject:** Touching base

Good afternoon Ron:

Sorry I have been a little unavailable. Due to a number of factors, I have taken over the relationship handling with the various RLL entities, and have been diligently making sure the sponsorship is put to bed, and getting to know all the players. My understanding is that all of that will be completed by Monday. I wanted to hold off moving forward and wasting your time if we were going to have a problem on that end, but it appears to be either solved and completed or nearly so. Having said that, while my office is closed on Friday, I will be in putting together a unified set of documents collecting the various policies you requested and an updated set of quote documents. I thought it would be best to put all of it together once and for all so David can review this efficiently.

We will get this out and talk right after that. Have a great Thanksgiving!

**David Anderson //** Vice President

**Seeman ★ Holtz**
300 Dousman Street, Green Bay, WI 54303
(920) 432-7246

EXHIBIT "Z"

Hi Dave

I know you are still in meetings but wanted to let you know that Fifth Third did not receive notification or confirmation of the wire transfer we discussed. Please let us know your thoughts once you have a chance to review.

Thank you,

TK

<image003.jpg>

**Tom Knox**
*Senior Vice President of Sales and Marketing*

C: 704.236.0453

www.rahal.com

NOTICE: This message and any documents, files or previous e-mail messages attached to it is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution, copying or acting upon the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. For more information, please visit www.rahal.com

# EXHIBIT "AA"

**From:** David Anderson <danderson@vuw4ins.com>
**Sent:** Tuesday, December 3, 2019 3:44 PM
**To:** Tom Knox <tknox@rahal.com>
**Subject:** Re: Checking in

Yeah I am still in a meeting. My initial thought is what the hell is going on and who I'm going to call soon as I get out to find out that answer. Can't move ahead unless this is handled.

Sent from my iPhone

EXHIBIT "BB"

**From:** Tom Knox <tknox@rahal.com>
**Sent:** Tuesday, December 3, 2019 3:04 PM
**To:** David Anderson <danderson@vuw4ins.com>
**Subject:** RE: Checking in

Okay.  Bobby wants to know/understand if what we discussed last week regarding
2019 resolution approved?  Is this a bank issue?  Thank you Dave.

EXHIBIT "CC"

**From:** David Anderson <danderson@vuw4ins.com>
**Sent:** Tuesday, December 03, 2019 4:26 PM
**To:** Tom Knox <tknox@rahal.com>
**Subject:** RE: Checking in

Ok, Ive talked to a few folks, and it appears to be a bank issue. I am trying to find out what it is, and how I can fix it. I will do my best to get back to you today, but don't be surprised if its after hours as I have 3 other commitments on time this afternoon yet.

Thanks for your patience.

**David Anderson** // Vice President
<image001.png>
300 Dousman Street, Green Bay, WI 54303
(920) 432-7246

**President, CEO**
Vincent, Urban, Walker & Associates
A Seeman Holtz Property & Casualty Company
300 Dousman Street, Green Bay, WI 54303
www.vuw4ins.com

EXHIBIT "DD"

BakerHostetler

Baker & Hostetler LLP

200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138

T  614.228.1541
F  614.462.2616
www.bakerlaw.com

Jack A. Bjerke
direct dial: 614.462.2700
JBjerke@bakerlaw.com

December 11, 2019

Marshal Seeman
Seeman Holtz, LLC
301 Yamato Road, Suite 2222
Boca Raton, Florida 33431

Re      *Motorsports Sponsorship Agreement between Rahal Letterman Lanigan Racing, LLC and
        Seeman Holtz, LLC*

Dear Mr. Seeman:

As you are aware, Seeman Holtz, LLC entered into a Sponsorship Agreement with Rahal
Letterman Lanigan Racing, LLC ("RLLR") for the 2019 IndyCar Season.  RLLR fully complied
with all of the terms and conditions of the Sponsorship Agreement and provided Seeman Holtz
with all of the benefits that were included in the Agreement.  Pursuant to the terms of the
Agreement, Seeman Holtz has agreed to pay RLLR $500,000.  Although I am aware of many
discussions among the parties, this matter has not been resolved.  This is a significant issue for
RLLR, and they intend to pursue all of their legal rights to collect on this account.

I would appreciate if you would put me in contact with your counsel in order that we can attempt
to resolve this matter amicably and avoid litigation.  Please respond to this letter on or before
December 13, 2019.

Sincerely,

Jack A. Bjerke

cc.     Eric Holtz
        Terry Spammato
        Robert W. Rahal
        Michael Lanigan
        Tom Knox

4845-0336-2558

Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Denver
Houston     Los Angeles     New York     Orlando     Philadelphia     Seattle     Washington, DC

# EXHIBIT "EE"

From: Bjerke, Jack
Sent: Friday, December 13, 2019 3:10 PM
To: 'Michael Kaminer'
<mkaminer@seemanholtzpc.com<mailto:mkaminer@seemanholtzpc.com>>
Subject: Rahal Letterman Lanigan Racing, LLC/Seeman Holtz


Michael:

I appreciate your call yesterday.  As I told you, I would provide you with more detailed information as to the status of the arrangement between Seeman Holtz and Rahal Letterman Lanigan Racing, LLC ("RLLR").  I have

attached for your information and review a copy of the signed Motorsports Sponsorship Agreement dated May 24, 2018, which agreement covers a portion of 2018, and all of the 2019 IndyCar Race Series. That Agreement provides the requirement for payment by Seeman Holtz to RLLR of $500,000. The $500,000 has not been paid.

On the other hand, all of the deliverables and requirements of the Agreement have been provided by RLLR to Seeman Holtz. I have included a copy of the "2019 Review of Deliverables" which includes all of the sponsorship and other assets that were provided to Seeman Holtz. As you can tell, at the St. Petersburg 2019 Race Seeman Holtz was the Primary Sponsor on Takuma Sato's Race Car. In addition, throughout 2019 Seeman Holtz was in a highly valued associate sponsorship position on Graham Rahal's Race Car. These are in addition to the other assets that were provided to Seeman Holtz. The value Seeman Holtz received with exposure to clients, hospitality, TV exposure, to attendees at the races and to all fans, etc., was far in excess of the sponsorship fee.

In summary, RLLR has honored all of its obligations to Seeman Holtz, and Seeman Holtz has failed to pay one dime to RLLR. Although there have been many

discussions back and forth among the parties, there has been no resolution.  RLLR has been very patient (even though they have been put off over and over again).  For example, yesterday a representative of Seeman Holtz asked Tom Knox to provide Bobby Rahal's cell number so that Marshal Seeman could call Bobby Rahal yesterday afternoon.  The number was provided, but no call was made.

I would appreciate if you could review this information and get back to me as quickly as possible in order that we can resolve this matter without delay.

Jack

Jack A. Bjerke
Partner

[cid:image001.jpg@01D5B1C7.59368090]
200 Civic Center Drive | Suite 1200